[Civ. No. 9782. Fourth Dist., Div. One. Aug. 31, 1970.]

MID-CENTURY INSURANCE COMPANY et al.,
Plaintiffs and Respondents, v.
JOHN F. HUTSEL, Defendant and Appellant.

## COUNSEL

Brown, Schall & Stennett, Arvin H. Brown, Jr., and Henry F. Walker for Defendant and Appellant.

McInnis, Fitzgerald & Wilkey, McInnis, Fitzgerald, Rees & Sharkey and Laurence L. Pillsbury for Plaintiffs and Respondents.

## OPINION

AULT, J.—John F. Hutsel appeals from a declaratory judgment entered against him and in favor of William H. Cousins, Joseph L. Leakes and Mid-Century Insurance Company (Mid-Century).

There is no dispute as to the facts. Hutsel was Cousins' insurance agent. The previous year he had placed Cousins' automobile liability insurance ($10,000/$20,000 bodily injury and $5,000 property damage) with Transnational Insurance Company. The policy expired on May 24, 1966. Having undertaken to do so, and having collected a premium therefor, Hutsel negligently failed to procure a new and similar liability policy for Cousins with some other insurance company (Hutsel does not dispute this finding on appeal). On May 28, 1966, just four days after Cousins' insurance with Transnational lapsed, his automobile was involved in a multiple injury accident in Connecticut. At the time of the accident, the automobile was being driven by his stepson, Leakes, with Cousins' consent and permission. Leakes carried liability insurance ($10,000/$20,000 bodily injury and $5,000 property damage) with Mid-Century. As a result of the accident several tort actions have been filed against Leakes and Cousins for personal injuries and property damage. None has yet resulted in judgment, but the total claims in the actions exceed the limits of Mid-Century's policy. Mid-Century has undertaken the defense of these actions on behalf of Leakes and Cousins. It also joined with them as a plaintiff in this action to seek a declaration of the respective rights and duties of the parties.

After finding Hutsel negligent in failing to procure liability insurance

for Cousins and finding such negligence proximately damaged Cousins and Leakes by depriving them of insurance protection which would otherwise have been available to them, the trial court concluded all three plaintiffs, Mid-Century, Leakes and Cousins, were entitled to a declaratory judgment against Hutsel. The judgment declared, as to the accident of May 28, 1966, and all claims arising therefrom, Hutsel was to indemnify reimburse or pay Mid-Century, Leakes and Cousins for all reasonable settlements made by them or judgments suffered by them not to exceed $10,000 per claimant, or $20,000 per multiple claimants for personal injury damage, or $5,000 for property damage, plus any costs assessed in favor of any claimant. The judgment further provided Hutsel was to indemnify and reimburse Mid-Century, Leakes and Cousins for all out-of-pocket costs for investigators, adjustors and attorneys, including litigation costs and expenses and, if the principal amounts of settlements or judgments exceeded the $10,000/$20,000 and $5,000 to be paid by Hutsel, such costs would be prorated between Hutsel and Mid-Century in the same proportion each would become ultimately responsible for the payment of the judgments and settlements.

The effect of the judgment is to require Hutsel to pay the first $10,000/$20,000 bodily injury and $5,000 property damage claims arising out of the accident of May 28, 1966, exactly as if he were an insurer who had issued a minimum coverage liability policy to Cousins. Not only does the judgment have the effect of making Hutsel personally and primarily liable for such claims and judgments up to and including the stated amounts, but it also makes Mid-Century's insurance coverage excess insurance, to be resorted to only if and after those limits have been exceeded.

■ As we have already stated, Hutsel makes no complaint on appeal concerning the court's finding he negligently failed to procure a minimum coverage liability policy for Cousins, or of the further finding Cousins and Leakes were damaged as a result of that failure by being deprived of insurance protection they would have otherwise had. He does vigorously object to that portion of the judgment which makes him primarily liable to pay the first $10,000/$20,000 bodily injury and $5,000 property damage claims arising out of the accident and which declares Mid-Century is liable only for such claims as exceed those limits. We think his objection is well taken and the judgment erroneous in the respect claimed.

Under the heading "USE OF OTHER AUTOMOBILE-BROAD FORM" Leakes' policy of insurance with Mid-Century provides:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, for Property Damage Liability and for Medical Expense

with respect to any automobile owned by the named insured applies with respect to any other automobile, subject to the following provisions:

"1. . . . . . . . . . . . . . . . . .

"2. . . . . . . . . . . . . . . . . .

"3. *Other Insurance.* The insurance for Bodily Injury Liability and for Property Damage Liability shall be excess insurance over any other collectible insurance available to the insured, either as an insured under a policy applicable with respect to the automobile or otherwise, against a loss covered hereunder. The insurance for Medical Expense shall be excess insurance over any other collectible medical expense insurance applicable with respect to the automobile. The insurance is in lieu of the insurance afforded by the policy with respect to a 'non-owned automobile'."

Under the undisputed facts and the plain wording of the "use of other automobile" clause of its policy, Mid-Century's coverage is applicable to claims arising from the May 28, 1966 accident in which its insured, Leakes, was driving Cousins' car. Mid-Century's liability under the policy is primary, becoming excess insurance only if other collectible insurance was available to its insured with respect to the automobile he was driving, or otherwise. There was no other collectible insurance available to its insured. The gravamen of Mid-Century's co-plaintiffs' complaint against Hutsel is that he negligently failed to provide such insurance. Whatever the nature of Hutsel's liability to Cousins, and his permissive driver Leakes, it may not be equated with the words, "other collectible insurance available to the insured," contained in Mid-Century's policy. ■ "The liability of one who breaches a contract to procure insurance is to pay damages, and is not that of an insurer." (*Bentley* v. *Fayas,* 260 Wis. 177, 186 [50 N.W.2d 404, 409, 29 A.L.R.2d 205].)

■ Holding Mid-Century primarily liable for the claims arising from the accident, to the extent of its policy limits, results in no injustice to it or to Cousins or Leakes. While Mid-Century's liability would have been excess, rather than primary, had Hutsel fulfilled his obligation to procure insurance for Cousins, that obligation does not run to Mid-Century to whom Hutsel owed no duty, contractual or otherwise. Mid-Century's legal liability springs from the terms of its own insurance contract, for which it was paid a premium, and from the fact its insured was the driver involved in the accident. If the claims arising from the accident result in reasonable settlements and judgments totaling less than Mid-Century's insurance coverage, neither Cousins nor Leakes has sustained damage by reason of Hutsel's breach. To that extent, the claims must be paid by Mid-Century, and Cousins' and Leakes' damage is *damnum absque injuria.* "Where plaintiff

has suffered no loss by failure of defendant to procure insurance, plaintiff's damage is *damnum absque injuria.*" (44 C.J.S., Insurance, § 225, p. 940, italics added.)

Mid-Century's liability is defined by the limits of its insurance policy. If the claims arising from the accident cannot be satisfied within its limits, Cousins and Leakes will be damaged because of Hutsel's breach. To the extent such excess claims may be satisfied within the range of the $10,000/$20,000 bodily injury and $5,000 property damage insurance coverage Hutsel undertook, but failed to procure, Hutsel concedes his liability. The judgment should require him to pay any such claims or to indemnify Cousins and Leakes if they, or either of them, are required to pay them.

■ Mid-Century's contention it is entitled to reimbursement from Hutsel for the loss it may sustain under the doctrine of equitable subrogation is without merit. Any loss Mid-Century may sustain will not be caused by Hutsel's failure to procure insurance coverage for Cousins. Its loss, if any, results from the fact Leakes, its insured, negligently caused an automobile accident. Hutsel's failure to procure insurance had nothing to do with the accident. ■ As stated in *Patent Scaffolding Co.* v. *William Simpson Constr. Co.,* 256 Cal.App.2d 506, 512 [64 Cal.Rptr. 187], where a similar contention was made under almost identical facts: "The California cases, with one exception, have not permitted equitable subrogation to insurers whose losses are not causally related to a breach of duty for which the party to be charged may be liable to the insured for a loss compensated by the insurers."

■ Our review of the *Patent Scaffolding Co.* case, and the cases upon which it relies, convinces us we should not deviate from the stated rule in this case. In equity, it cannot be said Mid-Century should recover from Hutsel for sums it may be required to pay because of the negligence of its own insured.

■ Our holding will require a complete turnabout of the judgment, including the portion of it providing for payment of costs and expenses in connection with the litigation and investigations in Connecticut.

The judgment is reversed with directions to the trial court to prepare new findings of fact, conclusions of law and judgment conforming to the views expressed in this opinion.

Coughlin, Acting P. J., and Whelan, J., concurred.

A petition for a rehearing was denied September 21, 1970, and respondents' petition for a hearing by the Supreme Court was denied October 28, 1970.