[Civ. No. 47014. Second Dist., Div. Four. May 21, 1976.]

HOLLYWOOD TURF CLUB, Cross-complainant and Appellant, v. MONTGOMERY ELEVATOR COMPANY, Cross-complainant and Respondent.

**COUNSEL**

Bonelli, Malone, Wood & Lyden, John G. Bonelli and Stanley Shapiro for Cross-complainant and Appellant.

Brill, Hunt, DeBuys & Burby and Michael T. Fox for Cross-complainant and Respondent.

**OPINION**

**KINGSLEY, Acting P. J.**—In August of 1972, the Hollywood Turf Club (Club) contracted with Montgomery Elevator Company (Montgomery) whereby Montgomery agreed to perform service and maintenance work on the escalators at the Club's race track premises. On April 14, 1973, a malfunctioning of one of those escalators occurred, whereby several patrons of the Club were injured. They sued both the Club and Montgomery and recovered a judgment in the amount of $40,672 plus costs.[1]

In that lawsuit the Club and Montgomery had each filed cross-complaints against the other for indemnity and, in the case of Montgom-

---

[1] We have augmented the record on appeal (rule 12(a), Cal. Rules of Court) by an examination of the superior court file, in order to verify statements in the briefs as to the details of this underlying litigation.

ery's cross-complaint, for breach of contract.[2] After the verdict and judgment in the main lawsuit, the cross-complaints were submitted on the record in the main action and on points and authorities filed with the court. Thereafter the matter was argued orally, once on the merits, once on objections to proposed findings and once on a motion for a new trial. The court entered judgment for Montgomery and against the Club, as follows:

"IT IS ORDERED, ADJUDGED AND DECREED that cross-complainant HOLLYWOOD TURF CLUB take nothing by its cross-complaint from cross-defendant MONTGOMERY ELEVATOR COMPANY; that cross-complainant MONTGOMERY ELEVATOR COMPANY shall recover from cross-defendant HOLLYWOOD TURF CLUB the attorneys fees it incurred in defense of plaintiffs' action in the amount of $7,914.30; and that cross-defendant HOLLYWOOD TURF CLUB shall pay the total amount of the judgment in favor of plaintiffs; and that cross-complainant MONTGOMERY ELEVATOR COMPANY shall have and recover from cross-defendant HOLLYWOOD TURF CLUB it [sic] costs of suit herein in the sum of $_____."

The Club has appealed;[3] we reverse.

### I

Both parties argue in this court that various factual matters are not supported in the record by any declarations or testimony. The whole record shows that both counsel in the trial court were willing to dispose of the cross-complaints with as little trial time as possible and that they intended the statements of counsel, even though not sworn to and even though in some cases hearsay, to be accepted and acted on by the trial court. Accordingly, we determine this appeal on all factual and undenied statements made by either counsel in their trial briefs and in oral argument in that court.

### II

The contract between the Club and Montgomery contained two provisions that are pertinent on this appeal:

---

[2]During the course of the proceedings in the trial court, Montgomery expressly withdrew its claim for indemnity under the contract between it and the Club. Montgomery relied in the trial court, and relies here, only on its cause of action for breach of contract.

[3]Although the notice of appeal specifies appeal is taken from the trial court's "decision," we treat it as an appeal from the "judgment."

"Nothing in this Agreement shall be construed to mean that Montgomery Elevator Company, or its subsidiaries, officers, directors, agents or employees .(herein collectively referred to as 'affiliates') assume any liability for damages or otherwise on account of accidents to persons or property (including but not limited to accidents arising or resulting from the overloading and/or misloading of any elevator or other device covered by this contract beyond its rated capacity) except those directly due to the negligence of Montgomery Elevator Company. You [Hollywood Turf Club] shall be solely responsible for supervising the use of the equipment and you shall provide whatever attendent [*sic*] personnel warning signs and other controls and cautions that may be required or desirable to insure safe operation. You shall at all times be solely liable for the operation of the equipment and you shall indemnify, protect and save harmless Montgomery Elevator Company and its affiliates from and against liabilities, losses and claims of any kind or nature imposed on, incurred by, or asserted against Montgomery Elevator Company or its affiliates arising out of the operation of the equipment. You hereby waive any and all rights of subrogation, arising as a matter of law or otherwise which you might hereafter have against Montgomery Elevator Company or its affiliates."

"You shall pay, in addition to the price, any tax imposed upon you by any existing or future law and the amount of any tax imposed upon us, our suppliers or you under any statute court decision, rule or regulation becoming effective after the date of this proposal which is based upon or incident to the transfer, use, ownership or possession of the materials or equipment involved in the performance hereof or the services rendered hereunder. You shall at all times and at your own cost, maintain comprehensive bodily injury and property damage insurance (naming Montgomery Elevator Company as an additional insured), including bodily injury and property damage caused by the ownership, use or operation of the equipment described herein."

Admittedly, the Club did not fulfill the contractual obligation to secure the addition of Montgomery as an additional insured under the Club's public liability policy. Montgomery had its own public liability policy, with a policy limit of $250,000 but with a provision providing for a $25,000 deductible. Under those facts, the Club is liable to Montgomery for (or is obligated to pay) $25,000 toward satisfaction of the judgment in the main action. The dispute is over whether the Club is obligated to Montgomery to pay the excess of the judgment over $25,000

and whether Montgomery is entitled to the award of "attorney fees" in the amount of $7,914.30. We determine both issues in favor of the Club.

## III

 We can find in the record no support for the award of "attorney fees." Montgomery refers us, in support of that award, to the declaration of Montgomery's counsel, in which he states: "Defense costs incurred by or·at the direction of this law firm, not including any sums expended directly by MONTGOMERY or time spent by any of their employees, agents, or insurance carriers, is in excess of $7,914.30."

Not only does that declaration contain no indication that the $7,914.30 included any element of "attorney fees," but nothing in the record before us indicates that Montgomery is obligated to pay the $7,914.30. Montgomery's own insurance policy is before us. It contains the usual provision obligating Montgomery's insurer to defend on its behalf and to pay, on its behalf, all attorney fees and costs. In fact, at oral argument in the trial court, counsel for Montgomery admitted that that was the situation. He said: "Montgomery never paid any costs. It's not obligated to pay any costs, and will not pay any costs, and —"

If we understand Montgomery's position, it is that, unless it can reimburse its insurance carrier for the insurer's costs, Montgomery will suffer an increase in its future premiums. We discuss, and reject, that theory under rubric VI of this opinion.

## IV

 Under the instructions given to the jury in the main action, the judgment against Montgomery was based on its own negligence, that against the Club was based on the fact that, as owner of the premises, it had a nondelegable duty to see that the escalator was maintained in good order. It follows that, by the express terms of the contract between the Club and Montgomery, Montgomery was primarily liable for the injuries suffered by the plaintiffs.[4]

---

[1]The findings of fact that underlie the judgment now before us contain the following: "The malfunction of the escalator was caused by the failure of a component known as a resistor. There was a difference of expert opinion as to whether the escalator malfunction would not have resulted from the resistor failure had the escalator mechanism been properly adjusted by Montgomery. Further, there was testimony by plaintiff's expert that Montgomery, in the exercise of care in maintaining the escalator, should have discovered the incipient failure of the resistor. Based upon this, the negligence of Montgomery, as found by the jury, was sufficiently supported."

Montgomery relies on *Markley* v. *Beagle* (1967) 66 Cal.2d 951 [59 Cal.Rptr. 809, 429 P.2d 129], and similar cases, which state that, where the parties have expressly contracted with respect to indemnity, the extent of that duty must be determined from the contract. That doctrine does not help Montgomery in the case at bench. The indemnity provision quoted does operate to free Montgomery from any indemnity with respect to liability for damages "except those directly due to the negligence of Montgomery Elevator Company." The effect of that exclusion from the indemnity provision was to leave the rights and duties of Montgomery to the noncontractual rules of implied indemnity, under which Montgomery, as the party guilty of active negligence, must bear the loss.

■ Even had the indemnity provision not contained the language expressly excluding Montgomery's negligence from the causes for which it was to be indemnified, the general language of the sentence would still have imposed liability on Montgomery. As the court said in *MacDonald & Kruse, Inc.* v. *San Jose Steel Co.* (1972) 29 Cal.App.3d 413, at pages 419-420 [105 Cal.Rptr. 725]: ■ "The second type of provision is that which provides that the indemnitor is to indemnify the indemnitee for the indemnitee's liability 'howsoever same may be caused' (*Vinnell Co.* v. *Pacific Elec. Ry. Co., supra*) or 'regardless of responsibility for negligence' (*Goldman* v. *Ecco-Phoenix Elec. Corp.*, 62 Cal.2d 40 [41 Cal.Rptr. 73, 396 P.2d 377]), or 'arising from the use of the premises, facilities or services of [the indemnitee]' (*Harvey Machine Co.* v. *Hatzel & Buehler, Inc.*, 54 Cal.2d 445 [6 Cal.Rptr. 284, 353 P.2d 924]), or 'which might arise in connection with the agreed work' *(Markley* v. *Beagle, supra),* or ' "caused by or happening in connection with the equipment or the condition, maintenance, possession, operation or use thereof" ' (*Price* v. *Shell Oil Co.*, 2 Cal.3d 245 [85 Cal.Rptr. 178, 466 P.2d 722]), or 'from any and all claims for damages to any person or property by reason of the use of said leased property' (*Morgan* v. *Stubblefield,* 6 Cal.3d 606 [100 Cal.Rptr. 1, 493 P.2d 465]). Under this type of indemnity provision, the indemnitee is indemnified from his own acts of passive negligence that solely or contributorily cause his liability, but is not indemnified for his own acts of active negligence that solely or contributorily cause his liability. Our Supreme Court explains that an actively negligent indemnitee will not be indemnified under this type of provision because '[t]he indemnification agreement resembles an insurance agreement' (*Goldman* v. *Ecco-Phoenix Elec. Corp., supra,* at p. 48) and an 'indemnitor [will not] be made responsible for the [actively]

negligent acts of an indemnitee over whose conduct it has no control [unless] the language imposing such liability should do so expressly and unequivocally so that the [indemnitor] is advised in definite terms of the liability to which it is exposed' (*Vinnell Co.* v. *Pacific Elec. Ry. Co., supra,* at pp. 416-417). A passively negligent indemnitee will be indemnified under this type of provision, however, because such provisions 'manifest that it is the intent of the parties' that the indemnitee's passive negligence 'was one of the risks, if not the most obvious risk, against which [the indemnitee] sought to be covered.' (*Harvey Machine Co.* v. *Hatzel & Buehler, Inc., supra,* at pp. 449, 448.) Most of our Supreme Court's work in the law of contractual indemnity has been with this type of provision and with the indemnitee who has himself been either solely or contributorily responsible for his liabilities. In these cases, the determinative issue is whether the indemnitee's negligence was active or passive."

It follows that the Club was entitled to have Montgomery assume the entire burden of the underlying judgment, except insofar as the contract to name Montgomery as an additional insured under the Club's insurance policy may dictate a different result.

V

As we have indicated above, Montgomery contends that, because it was not fully insured under the Club policy, it was damaged not merely by the $25,000 not covered by its own insurance but by the entire judgment. That contention is contra to the holding in *Mid-Century Ins. Co.* v. *Hutsel* (1970) 10 Cal.App.3d 1065 [89 Cal.Rptr. 421]. In that case, an insurance broker negligently had allowed a car owner's policy to lapse. An accident followed in which the car was being driven by a permittee, which had insurance that was "excess" over any other insurance available to the driver. The trial court (treating the broker's negligence as making him an insurer of the owner) held that the driver and his insurer were entitled to impose on the broker liability up to the amount of the insurance he should have procured, and he prorates with the driver and his carrier for any excess over that amount. The Court of Appeal reversed, holding that the driver's insurance carrier was the primary insurer, since there was no other insurance available to the driver, and that the driver and his carrier were entitled only to damages for the breach of the contract to insure the owner. In that connection, the appellate court said (at p. 1070): "Mid-Century's contention it is entitled to reimbursement from Hutsel for the loss it may sustain under the

doctrine of equitable subrogation is without merit. Any loss Mid-Century may sustain will not be caused by Hutsel's failure to procure insurance coverage for Cousins. Its loss, if any, results from the fact Leakes, its insured, negligently caused an automobile accident. Hutsel's failure to procure insurance had nothing to do with the accident. ■ As stated in *Patent Scaffolding Co.* v. *William Simpson Constr. Co.*, 256 Cal.App.2d 506, 512 [64 Cal.Rptr. 187], where a similar contention was made under almost identical facts: 'The California cases, with one exception, have not permitted equitable subrogation to insurers whose losses are not causally related to a breach of duty for which the party to be charged may be liable to the insured for a loss compensated by the insurers.'

"Our review of the *Patent Scaffolding Co.* case, and the cases upon which it relies, convinces us we should not deviate from the stated rule in this case. In equity, it cannot be said Mid-Century should recover from Hutsel for sums it may be required to pay because of the negligence of its own insured."

■ Montgomery seeks to distinguish *Hutsel* on the ground that *Hutsel* involved the insurance carrier. The distinction is without significance. *Hutsel* was a suit by both the insurer, the owner and the driver; the decision ran in favor of all three. Other distinctions relied on by Montgomery are similarly immaterial. The principle of *Hutsel* controls here: Montgomery is entitled to no more than the difference between the judgment it must pay and the amount that the Club should have covered.

## VI

■■ Montgomery here argues that it is entitled to be indemnified against the full judgment on the theory that, if its insurance carrier is required to pay the judgment over the $25,000 that the Club is obligated to pay, its future premiums, on any renewal of its own policy,[5] will be increased because of a poor risk rating. The argument is not persuasive. While counsel for Montgomery argued, and the trial court seemed to agree, that Montgomery's rates might go up, there is nothing in the record before us to support a finding that Montgomery's insurance carrier would, in fact, increase Montgomery's premium rate. Nor is there

---

[5]Any contention that Montgomery is entitled to recover for premiums on its present policy is foreclosed by *Patent Scaffolding Co.* v. *William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506 [64 Cal.Rptr. 187]. If Montgomery's theory has any validity it is based on the prospect of an increase in premium rates in the future.

any hint in the record as to how great that hypothetical increase might be.

Assuming that Montgomery will suffer *some* increase in premiums, its theory, at the most, would entitle it to recover from the Club the amount of that increase for breach of contract. Montgomery is in no way damaged by the amount of the judgment; it is damaged, if at all, by the increase in premiums,[6] an item as to which there is no scintilla of proof.

The judgment is reversed, with directions to enter a new judgment in conformity with this opinion.

Dunn, J., and Jefferson (Bernard), J., concurred.

---

[6]We reiterate that the present action is between the Club and Montgomery. The rights of the two insurance carriers, as between themselves, are not here involved.