[No. 6791–1.   Division One.   October 8, 1979.]

RONALD G. REDFORD, ET AL, *Plaintiffs,* v. THE CITY
OF SEATTLE, ET AL, *Defendants,* JORGENSEN
STEEL COMPANY, *Respondent,* WAYNE
JACOBSON, ET AL, *Appellants.*

*Reed, McClure, Moceri '& Thonn, P.S., William Robert Hickman, Hugh A. McClure,* and *John W. Rankin, Jr.,* for appellants.

*Stafford, Frey & Mertel, A. Richard Dykstra,* and *Charles W. Mertel,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

An employer seeks review of an order of partial summary judgment requiring him to indemnify a third party for sums paid by the third party on a personal injury claim to a workman of the employer.

Jacobson and Sons, a painting contractor, is the employer. Jorgensen Steel Company is the third party. Jacobson contracted to do painting work for Jorgensen on Jorgensen's premises. Ronald G. Redford, an employee of Jacobson, sustained serious injuries while painting Jorgensen's building.

Redford sued Jorgensen for damages. Jorgensen thereupon filed a third–party complaint against Jacobson seeking indemnity in accordance with a written indemnity agreement between Jorgensen and Jacobson. That agreement is set forth as Appendix A.

The parties stipulated to the following facts. The third party was negligent and its negligence was a proximate cause of the employee's injury. The employer was also negligent and its negligence was likewise a proximate cause of the employee's injury. The indemnity agreement between the third party and the employer covered the job on which the employee was injured. The personal injury claim of the employee against the third party was settled for

$690,840.63.[1] The third party's contribution to that settlement was $490,840.63. At the time the employee was injured, he was working within the scope of his employment.

The third party moved for summary judgment declaring that the language of the indemnity agreement gave it a right to indemnity from the employer for damages paid by the third party to the injured employee.

At the conclusion of the hearing on the third party's motion for summary judgment, the trial court entered a partial summary judgment to the following effect: (1) the agreement between the third party (Jorgensen) and the employer (Jacobson) is a valid, enforceable indemnity agreement which is applicable to the situation in which indemnitor and indemnitee are causally negligent; (2) the agreement means that the loss suffered by the third party (Jorgensen), in the form of its settlement of the employee's action against it, must be apportioned between the third party and the employer, so that the employer indemnifies the third party for all of the third party's $490,840.63 loss except that portion of it which was attributable to the causal negligence of the third party; and (3) a trial must be held for the jury to determine which portion of the causal negligence is the third party's and is to be deducted from the third party's settlement contribution.

No issue is raised as to the reasonableness of the settlement.

We have accepted review of the order of partial summary judgment.

Two basic issues are presented.

## ISSUES

ISSUE ONE. In an action by an employee, can a negligent third party obtain indemnity from an employer under a written indemnification agreement when the employer's

[1]The City of Seattle was also sued by the employee and contributed to the settlement. The City is not a party to this appeal, however, so for the purposes of this opinion, we will consider Jorgensen Steel Company as the sole third party.

negligence has caused or contributed to the injury sustained by the employee?

ISSUE TWO. Is an indemnity agreement invalid when the negligence of the indemnitee is excepted therefrom?

## DECISION

ISSUE ONE.

CONCLUSION. The third party may recover in indemnity over against an employer where, as here, the employer voluntarily assumed an independent obligation to the third party by entering into a written indemnity agreement and where the third party's action was based solely on that agreement and not on the employer's conduct toward its injured employee.

In *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 588 P.2d 1308 (1978), the State Supreme Court recently addressed some aspects of the question of whether a third party in an action by an employee can obtain contribution or indemnity from the employer where the employer's own negligence has caused or contributed to the injury.

In *Shoreline,* it was held that an employer who pays its premiums under the state industrial insurance act, RCW Title 51, is thereby immunized from either direct or third–party tort actions arising from the employer's negligent conduct toward its employee who is injured.

*Shoreline* went on to hold:

> A different situation is present, however, where an employer voluntarily assumes an independent duty or obligation to the third party. *See Olch v. Pacific Press & Shear Co.* [19 Wn. App. 89, 573 P.2d 1355 (1978)], *supra* at 92–93; *Montoya v. Greenway Aluminum Co.* [10 Wn. App. 630, 519 P.2d 22 (1974)], *supra* at 631–32; *Tucci & Sons, Inc. v. Carl T. Madsen Inc.,* 1 Wn. App. 1035, 1040–41, 467 P.2d 386 (1970). *See also* 2A A. Larson, *The Law of Workmen's Compensation* §§ 76.10, 76.30 *et seq.* (1976). Nonetheless, for these actions to be judicially cognizable, the third party's theory of *employer* liability cannot stem from conduct "immunized" by the Act, *e.g.,* that which necessarily involves the employer's conduct

vis–a–vis the employee. Any such action must be based solely upon an independent obligation existing between the employer and the third–party claimant.

*Seattle–First Nat'l Bank v. Shoreline Concrete Co., supra* at 242–43.

Although *Shoreline* involved indemnity claims of third parties against the employer of the employee whose death gave rise to those claims, the claims all sounded in tort. *Shoreline* did not involve indemnity claims based on contract, as here. In *Shoreline,* the indemnity claims were determined from the record before the court to be based on the fault of the employer toward its own employee and on that basis were held not to be judicially cognizable. *Shoreline* did not hold, as the employer here contends, that our courts are without jurisdiction over contractual theories of liability by a third party against an employer.

In the present case, both the employer and the third party were negligent and their negligent acts or omissions were proximate causes of the employee's injury. The third party's negligence was thus a joint or concurrent cause of the injury. Because the harm caused was indivisible, the third party was responsible for the entire harm caused and the injured employee had the right to look to it alone for full recovery. *Seattle–First Nat'l Bank v. Shoreline Concrete Co., supra* at 234–36. The fact that the employer's negligence contributed to cause the injury does not thereby render the indemnity agreement unenforceable against the employer. *Cope v. J.K. Campbell & Assocs., Ltd.,* 71 Wn.2d 453, 429 P.2d 124 (1967).

Most jurisdictions, including our own, permit a third party to recover over against the employer whenever it can be said that the employer has an independent obligation to indemnify the third party. 2A A. Larson, *The Law of Workmen's Compensation* § 76.30 (1976); *Seattle–First Nat'l Bank v. Shoreline Concrete Co., supra* at 242–44; *Tucci & Sons, Inc. v. Carl T. Madsen, Inc.,* 1 Wn. App. 1035, 467 P.2d 386 (1970). *See Olch v. Pacific Press &*

*Shear Co.,* 19 Wn. App. 89, 573 P.2d 1355 (1978) and *Montoya v. Greenway Aluminum Co.,* 10 Wn. App. 630, 519 P.2d 22 (1974).

A written indemnity agreement, as is involved here, does create an independent obligation on the employer to indemnify the third party. As Larson explains:

§ 76.40 What acts create independent obligation to indemnify

§ 76.41 Express contract of indemnity

The clearest exception to the exclusive–liability clause is the third party's right to enforce an express contract in which the employer agrees to indemnify the third party for the very kind of loss that the third party has been made to pay to the employee. A familiar example is the situation in which an employee is injured because of the condition of the premises, and recovers from the landlord who leased the premises to the employer; if the landlord in the lease has exacted a covenant from the employer to hold the landlord harmless in the event of such claims, the enforcement of this covenant does not violate the exclusive–remedy provision of the compensation act. Another increasingly familiar example is the hold–harmless agreement assumed by a contractor doing work for a city or other owner, or by a subcontractor for the benefit of the general contractor. Indeed, with everyone trying to protect himself by such agreements, one may even encounter them in series, along which the liability travels until it settles upon the ultimate indemnitor.

(Footnotes omitted.) 2A A. Larson, *The Law of Workmen's Compensation* 14–324 – 14–327 (1976). *Accord, Tucci & Sons, Inc. v. Carl T. Madsen, Inc., supra.* This principle has also been recognized by our decisions in *Olch v. Pacific Press & Shear Co., supra* and *Montoya v. Greenway Aluminum Co., supra.*

Here, the employer by entering into the written indemnity agreement assumed an independent obligation to the third party. By his contract, the employer agreed to indemnify the third party for the kind of loss that the third party paid to the employee. The present indemnity action by the third party against the employer is based solely on that independent obligation and will therefore lie.

Issue Two.

Conclusion. Reviewing the indemnity agreement signed by the parties in this case in accordance with the rules of construction applicable to such agreements, and under the facts presented, we conclude that it is valid.

In paragraph number 1 of the indemnity agreement (Appendix A), the indemnitor (Jacobson) agreed to indemnify the indemnitee (Jorgensen) for injuries such as occurred here arising from any cause whatsoever "except negligence . . . of Jorgensen . . ." The indemnitor (Jacobson) argues that the effect of this exclusion is to leave the right of the indemnitee (Jorgensen) to common–law rules of indemnity which, as he further argues, precludes the indemnitee from recovering anything. We disagree.

RCW 4.24.115 was enacted in 1967. It invalidates any construction industry indemnity agreement to the extent that the agreement purports to indemnify indemnitees for loss caused by their sole negligence.[2] Undoubtedly it was in order to avoid the possibility of invalidity on the basis of that statute that the indemnity agreement excepted harm caused by the indemnitee's own negligence from the indemnitor's contractual obligation to indemnify. We do not, however, see that as imparting any ambiguity into the agreement or as being fatal to it.

▮ We do not have the power, under the guise of interpretation, to rewrite contracts which the parties have deliberately made for themselves. *Patterson v. Bixby*, 58 Wn.2d 454, 458, 364 P.2d 10 (1961). In interpreting an

---

[2]"Validity of agreement to indemnify against liability for negligence relative to construction, alteration, improvement, etc., of structure or improvement attached to real estate. A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair, addition to, subtraction from, improvement to, or maintenance of, any building, highway, road, railroad, excavation, or other structure, project, development, or improvement attached to real estate, including moving and demolition in connection therewith, purporting to indemnify against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the indemnitee, his agents or employees is against public policy and is void and unenforceable." RCW 4.24.115.

agreement such as the one before us, an interpretation which gives effect to all of its provisions is to be favored over one which renders some of the language meaningless or ineffective. *Newsom v. Miller,* 42 Wn.2d 727, 731, 258 P.2d 812 (1953). As declared in *Continental Cas. Co. v. Municipality of Metropolitan Seattle,* 66 Wn.2d 831, 834–35, 405 P.2d 581 (1965):

> In *Union Pac. R.R. Co. v. Ross Transfer Co.,* 64 Wn.2d 486, 392 P.2d 450 (1964), we refused to read into an indemnity contract an exclusion for concurrent negligence. In *Union Pac. R.R. Co., supra,* we approved the rule that:
>
>> ". . . Contracts of indemnity, therefore, must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed. To this end they should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design, nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability within the scope or spirit of their terms."

■ Viewed in accordance with the foregoing rules of construction, the final proviso of paragraph number 1 of the indemnity agreement (Appendix A) simply excludes the negligence of the indemnitee (Jorgensen) and requires the indemnitor (Jacobson) to indemnify the indemnitee for that part of the indemnitee's loss which is attributable to all other causes. As the trial judge succinctly expressed it in her oral opinion:

> When you say "except negligence of Jorgensen," it has to mean "except negligence of Jorgensen" and it doesn't mean, then, Jacobson is home free. It is simply, "Jacobson, you pay me everything except my negligence," and that would be concurrent negligence, and that would be apportioned. And that would be a jury issue, a question of fact.

In the employer's brief, the California Court of Appeals decision in *Hollywood Turf Club v. Montgomery Elevator Co.,* 58 Cal. App. 3d 580, 130 Cal. Rptr. 81 (1976) is relied on heavily. In that case the court construed an indemnity agreement with language similar to the questioned proviso

in the present case. We do not find that opinion persuasive and note that the California Supreme Court recently referred to the indemnity aspects of it as "somewhat opaque." *E.L. White, Inc. v. Huntington Beach,* 21 Cal. 3d 497, 579 P.2d 505, 513, 146 Cal. Rptr. 614 (1978).

Under the indemnity agreement in the *Hollywood Turf Club* case, it was the landlord who agreed to indemnify the contractor for all liability for accidents "except those directly due to the negligence of [the contractor]," *Hollywood Turf Club v. Montgomery Elevator Co.,* 58 Cal. App. 3d at 585, 130 Cal. Rptr. at 83, a situation just the reverse of that in the case before us. In that case the contractor, who had been found to be solely negligent, was held not to be entitled to indemnity from the landlord, whose liability was predicated only on the breach of a nondelegable duty. Thus in that case the same result was reached under principles of California indemnity law, which in some respects are different from our own, which would likely be reached in Washington by statute. RCW 4.24.115 (footnote 2).

One somewhat unusual effect of the trial court's decision in this case is to require contribution or apportionment between joint or concurrent tort–feasors. This result is reached, however, on the basis of contract rather than common–law principles. Since Jorgensen has not cross–appealed from the order on partial summary judgment, and since neither party to this appeal has sought to require the indemnitor (Jacobson) to pay the indemnitee (Jorgensen) the full amount of Jorgensen's loss, it is unnecessary for us to further address that aspect of the case. *State v. Wood,* 89 Wn.2d 97, 99, 569 P.2d 1148 (1977).

The trial court did not err in upholding the indemnity contract and entering the order on partial summary judgment.

Having decided this case on the basis stated, we do not reach the other questions raised.

Affirmed.

JAMES and DORE, JJ., concur.

## Appendix A

### Release Agreement

This Agreement is made this __15__ day of ____July____, 19 _76_ , by and between Earle M. Jorgensen Company, a corporation (hereinafter referred to as "Jorgensen"), and____ Jacobson & Sons, 940 NW 49th; Seattle, WA 98107
_____(hereinafter referred to as "Contractor");

### Witnesseth:

Whereas, Jorgensen has issued to Contractor Jorgensen's Purchase Order No.__ 44952 __, dated____ 07–15–76 ____ (hereinafter referred to as "Purchase Order"), wherein Jorgensen has requested Contractor to perform certain services on and/or deliver certain goods to the premises of Jorgensen, in consideration for which Jorgensen has promised to pay to Contractor____ not more than $5600.00 _____
_____; and

Whereas, the parties hereto have discussed expressly and in detail the nature of Jorgensen's premises; and

Whereas, every facet of Jorgensen's operation which might contain some hazard to Contractor, its employees, agents or representatives has been revealed to and discussed with Contractor; and

Whereas, it is the intention of both Jorgensen and Contractor that Jorgensen, its officers, agents and employees shall not be liable or in any way responsible for damage, loss or expense resulting to Contractor, its employees, agents or representatives due to accidents, mishaps or injuries, either to person or property, of any kind arising from any cause whatsoever, except such damage, loss, or expense arising from intentional misconduct of Jorgensen or its employees acting within the scope of their employment;

Now, Therefore, in consideration of Jorgensen's agreement to purchase from Contractor certain services and/or goods as described in the Purchase Order and Jorgensen's promise to pay to Contractor the consideration therefor, Jorgensen and Contractor hereby agree as follows:

1. Contractor assumes the risk of all damage, loss, cost and expense, and agrees to indemnify and hold harmless Jorgensen, its officers, agents and employees from and against any and all liability, damage, loss, cost and expense which may accrue to or be sustained by Jorgensen, its officers, agents or employees on account of any claim, suit or action made or brought against Jorgensen, its officers, agents or employees, for the death of or injury to persons or destruction of property involving Contractor, its employees, agents and representatives, sustained in connection with performance of the Purchase Order, arising from any cause whatsoever (including without limitation falls from scaffolding, ladders, catwalks, beams or other high places; mishaps involving cranes, booms, elevators,

trucks or other equipment; injuries resulting from electrical shock; and failure of or defects in any equipment, instrument or device supplied by Jorgensen or its employees to Contractor, its employees, agents or representatives at the request of Contractor, its employees, agents or representatives) except negligence and willful misconduct of Jorgensen or its employees acting within the scope of their employment;

2. Contractor agrees it will comply with and will cause its employees, agents and representatives to comply with all Jorgensen safety rules and all rules, regulations and standards of and issued pursuant to the applicable state and federal occupational safety and health acts (OSHA) while on Jorgensen premises, including Contractor furnishing to and requiring the use by its employees, agents and representatives of OSHA–approved and required protective equipment such as hard hats, safety glasses and/or any other personal protective equipment.

3. Contractor expressly waives all rights to make claim or file suit against Jorgensen for, and releases Jorgensen from all liability or responsibility of any kind arising from, such damage, loss, cost or expense, and the consideration received by Contractor pursuant to the Purchase Order is complete satisfaction for all such damage, loss or expense heretofore or hereafter sustained;

4. This Release Agreement is supplemental to the Purchase Order, which is by reference made a part hereof, and all the terms, conditions and provisions thereof (unless specifically modified herein) are to apply hereto and are made a part hereof the same as though they were expressly rewritten, incorporated, and included herein;

5. It is further understood and agreed by the parties hereto that if any of the provisions hereof should contravene, or be invalid under, the laws of the particular state, county or jurisdiction where used, such contravention or invalidity shall not invalidate this Release Agreement or the Purchase Order, but each shall be construed as if not containing the particular provision or provisions held to be invalid, and the rights and obligations of the parties hereto shall be construed and enforced accordingly; and

6. With respect to the liability of Jorgensen, its officers, agents and employees, to Contractor, its employees, agents or representatives, for injuries covered by the language hereof, this Release Agreement supersedes all other agreements and represents the full and complete understanding of the parties, except as otherwise provided hereinbelow:_____

In Witness Whereof, the parties hereto have executed this Release Agreement as of the day, month and year first above written.

EARLE M. JORGENSEN COMPANY,

By_____Jack Bunt_____

Title____Asst. General Mgr._____

CONTRACTOR

By_____Wayne Jacobson_____

Title____Owner_____

Reconsideration denied December 21, 1979.

Review granted by Supreme Court February 22, 1980.