ALYESKA PIPELINE SERVICE COMPANY, Appellant,

v.

H.C. PRICE COMPANY; R.B. Potashnick; Codell Construction Company; Oman Construction Company; Price-Potashnick-Codell-Oman, a joint venture; and the Harbor Insurance Company, Appellees.

File No. S–99.

Supreme Court of Alaska.

Jan. 4, 1985.

Robert L. Eastaugh, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for appellant.

Joseph L. Reece, Bradbury, Bliss & Riordan, Inc., Anchorage, for appellees.

Before BURKE, C.J., and RABINOWITZ and COMPTON, JJ.

## OPINION

COMPTON, Justice.

This appeal concerns a claim for indemnification brought by Alyeska Pipeline Service Company against one of its execution contractors. Alyeska claims that it is entitled to be indemnified for $1 million it paid in retrospective premiums to its insurance carrier towards a $3 million settlement of a personal injury claim brought by an employee of the contractor. The superior court granted summary judgment for the contractor. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Alyeska Pipeline Service Company (Alyeska) is the consortium of companies which built the Trans Alaska Pipeline. It contracted with Price-Potashnick-Codell-Oman (PPCO), a joint venture, to build Section 3 of the pipeline. The contract between Alyeska and PPCO includes an indemnity clause[1] and requires that Alyeska provide comprehensive liability insurance to a limit of $1 million for PPCO.[2] Alyeska obtained this insurance from Alaska Pacific Assurance Company (ALPAC) in a "wrap-up" plan, known as the Coordinated Insurance Program (CIP), under which ALPAC provided insurance for Alyeska and for all of its execution contractors under one program. Alyeska paid for the insurance through retrospective premiums, whereby Alyeska repaid ALPAC the amount ALPAC paid out in claims. PPCO obtained $5 million in excess insurance from Harbor Insurance Company (Harbor).

Kelley Key Everette, a PPCO employee, was severely injured while working on a section of the pipeline. He received $123,905.05 in workers' compensation benefits for his injury.

1. The contract requires in pertinent part:
ARTICLE 17. RESPONSIBILITY AND INDEMNITY
C. *Indemnity*
2. *Third Parties*—Without regard to whether any acts or omission of CMC, ALYESKA or OWNERS or other parties contributed to injury, death or property damage, CONTRACTOR shall be responsible for and shall indemnify, defend and save harmless CMC ALYESKA, [and] OWNERS ... from and against any and all claims, demands and causes of action brought by any and all persons, including without limitation, CONTRACTOR's officers, agents, employees, representatives or subcontractors or by any third parties, and against any and all judgments in respect thereto on account of personal injury or death or on account of property damage or destruction or loss arising out of any act or omission of CONTRACTOR, its officers, employees, agents, representatives or subcontractors.... However, CONTRACTOR ... shall not be responsible for any injury, death or property damage cause [sic] by the sole negli-
gence of CMC, ALYESKA, OWNERS, their employees, agents or representatives.

2. The contract requires in pertinent part:
ARTICLE 18. INSURANCE
B. *Insurance Requirements*
1. b. *Comprehensive General Liability*
1) ALYESKA, for and on behalf of OWNERS shall obtain and pay for comprehensive general liability insurance covering CONTRACTOR's and Subcontractors' activities *within the State of Alaska in accomplishing* the WORK in the following limits:

| a) | Bodily injury | $1,000,000 each person |
| b) | Bodily injury | $1,000,000 each occurrence |
| c) | Bodily injury | $1,000,000 in the annual aggregate |
| d) | Property damage | $1,000,000 each occurrence |
| e) | Property damage | $1,000,000 in the annual aggregate |

Everette filed suit against Alyeska in October 1976.[3] Alyeska was granted summary judgment after the superior court concluded that Everette was the employee of an independent contractor and Alyeska owed him no duty of care. *Everette v. Alyeska Pipeline Service Co.*, 614 P.2d 1341, 1344 (Alaska 1980). We reversed in 1980, and the case was remanded for trial. *Id.*

In September 1979 Alyeska tendered its defense of Everette's suit to PPCO. PPCO forwarded the tender to ALPAC, which agreed in March 1980 to defend PPCO. After repeated requests by Harbor, separate counsel was appointed for PPCO in November 1980. PPCO formally accepted the tender of defense in October 1980.

In July 1981 Everette's claims against Alyeska were settled for $3 million plus an agreement to pay Everette's medical expenses for life. ALPAC paid for the medical insurance plus $1 million on behalf of PPCO and $1 million on behalf of Alyeska. Harbor contributed the remaining $1 million on behalf of PPCO. In accordance with its retrospective premium arrangement, Alyeska repaid ALPAC for the $2 million ALPAC was required to contribute.

In December 1981, Alyeska filed suit for indemnity against PPCO, the four companies participating in the joint venture, and Harbor Insurance Company. It asked for the $1 million ALPAC contributed to the settlement on behalf of Alyeska, and for the costs and attorneys fees incurred by Alyeska in defending itself against Everette's claims.[4]

Alyeska moved for summary judgment claiming that it was entitled to indemnification in the amount of $1 million as a matter of law. PPCO moved for summary judgment, claiming that Alyeska was, in effect, an insurer attempting to recover from its own insured. It also contended that issues of fact had been raised as to Alyeska and ALPAC's bad faith in defending Everette's suit, and that summary judgment therefore could not be awarded to Alyeska.

The superior court granted summary judgment to PPCO on two alternative grounds. First, it ruled that Alyeska, through its retrospective premium arrangement, became in effect PPCO's insurer, and was thus barred from suing its own insured. Alternatively, it ruled that Alyeska's claims were essentially claims for insurance premiums which were not contemplated in the indemnity provision of the contract.

This appeal followed. Alyeska asks that we reverse the grant of summary judgment to PPCO and order that the superior court grant Alyeska summary judgment and award it the $1 million paid on its behalf to settle Everette's claim.

## II. SHOULD ALYESKA BE VIEWED AS PPCO'S INSURER?

The relationship of the parties is governed by the terms of the contract. The question is whether the duties imposed on Alyeska bring it within the statutory definition of an insurer.[5] Article 18 required Alyeska to obtain for PPCO comprehensive general liability insurance in the amount of $1 million. The contract imposed on Alyeska no fiduciary duties or other obligations typically required of insurers.

A promise to purchase insurance under which another is the named insured is not equivalent to a promise to indemnify the promisee. *Olympic, Inc. v. Providence*

3. Everette also sued PPCO. That suit was dismissed on the basis of the exclusivity provision of the workers' compensation statute. AS 23.-30.055.

4. In its complaint, Alyeska also sought indemnity for $750,000 paid in workers' compensation benefits and in insurance for Everette's future medical care, but abandoned those claims on appeal.

5. AS 21.90.030 provides:
"Insurance" is a contract whereby one undertakes to indemnify another or pay or provide a specified or determinable amount or benefit upon determinable contingencies.
AS 21.90.040 provides:
"Insurer" includes a person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance or of annuity.

*Washington Insurance Co. of Alaska,* 648 P.2d 1008, 1011–1012 (Alaska 1982); *Continental Insurance Co. v. Bussell,* 498 P.2d 706, 708–709 (Alaska 1972). Even when the promise to obtain insurance is breached, the promisor does not thereby become an insurer, but is liable only for damages. *Vaughan v. C and J Lynch Co.,* 69 Cal. App.3d 428, 138 Cal.Rptr. 40, 42–43 (1977); *Mid-Century Insurance Company v. Hutsel,* 10 Cal.App.3d 1065, 89 Cal.Rptr. 421, 423 (1970).

■ Therefore, the contract between Alyeska and PPCO did not obligate Alyeska to insure PPCO, but merely to procure insurance on its behalf; it imposed on Alyeska no express or implied fiduciary duties.[6]

Neither the nature of the wrap-up insurance program nor the retrospective payment of premiums alters our conclusion. When the pipeline project was in the planning stages, the Alaska Association of Insurance Agents challenged the propriety of the proposed insurance plan under AS 21.-36.150.[7] The director of the Alaska Division of Insurance rejected the challenge because there was no evidence that "TAPS [Alyeska's predecessor] is or was at any time engaged in the insurance business or contemplates engaging the insurance business." *See Alaska Association of Insurance Agents v. Trans Alaska Pipeline System,* [5011] Alaska Insurance Laws and Related Statutes (McCoombs) 2611 (Alaska

Department of Commerce Division of Insurance Order 70–2) (April 17, 1970).

The actual insurance program followed the proposal approved by the Division of Insurance. ALPAC, not Alyeska, was PPCO's insurer. Alyeska merely promised to procure insurance for PPCO. ALPAC, a wholly separate entity from Alyeska, contracted to insure PPCO, issued insurance policies, expressly undertook to provide PPCO's defense and coverage, received premiums paid by Alyeska, accepted the risk of loss, administered payment of the workers' compensation benefits, and hired separate counsel to represent PPCO.

■ Alyeska does not rely on principles of subrogation for its recovery. Its claim rests on the express indemnity provision of the Alyeska-PPCO contract. Therefore it is irrelevant that premiums were assessed and paid retrospectively.

■ ALPAC bore the risk of loss and the risk that Alyeska would not pay the required premiums. Nonpayment by Alyeska could have no effect on ALPAC's duty to PPCO arising from an accident occurring before the effective date of cancellation of the insurance policy for nonpayment of premiums.[8]

■ The effect of the wrap-up insurance program with retrospective premiums was that Alyeska was self-insured with respect to losses caused solely by its own negli-

6. The contract did impose fiduciary duties on PPCO. When a construction contractor promises to indemnify and defend an owner against any claim or liability, he is subject to many of the obligations imposed on insurers. *See Stephan & Sons v. Municipality of Anchorage,* 629 P.2d 71 (Alaska 1981).

7. AS 21.36.150 provides in pertinent part:
    (a) If the director believes that a person engaged in the insurance business is engaging in this state in an unfair method of competition or in an unfair or deceptive act or practice in the conduct of the business which is not defined as being unfair or deceptive under this chapter, he shall hold a hearing on the matter, if he believes it would be in the public interest to do so after giving notice of the hearing and of the charges. Upon conclusion of the hearing the director shall make a written report of his findings of fact relative

to the charges and serve a copy upon the person and any intervenor at the hearing.
    The Agents Association also charged Alyeska's predecessor violated AS 21.36.080 (boycott, coercion and intimidation) and AS 21.36.190 (fictitious groups).

8. ALPAC's duties to PPCO could be relieved only by cancelling the policy before its natural expiration date. Cancellation for nonpayment of premiums has no effect on an accident occurring before the cancellation date. *Conley v. Ratayzcak,* 92 Ill.App.3d 29, 46 Ill.Dec. 616, 620, 414 N.E.2d 500, 504 (Ill.App.1980); *Bassett v. Federal Kemper Ins. Co.,* 565 S.W.2d 823, 825–826 (Mo.App.1978). Since retrospective premiums are by definition paid after a loss, nonpayment by Alyeska could have no effect on ALPAC's duties to PPCO.

gence, and ALPAC acted as Alyeska's agent in investigating, settling, and defending claims against Alyeska. *See Transport Indemnity Co. v. Dahlen Transport Inc.,* 161 N.W.2d 546, 548 (Minn.1968). However, this does not mean that ALPAC was an agent of Alyeska for the purpose of insuring PPCO.

Our decision in *Baugh-Belarde Construction Co. v. College Utilities Corp.,* 561 P.2d 1211 (Alaska 1977) does not control here. In *Baugh-Belarde,* an insurer sought to enforce a contractual indemnity agreement between its insured contractor and subcontractor. We held that an insurer could not be subrogated to an indemnity claim of one insured (the contractor) against another (the subcontractor). In contrast, Alyeska is not PPCO's insurer, and its claim does not rest on subrogation principles, but rather on its own contract with PPCO.

Nor do the facts here fall within any of the policy rationales supporting our decision in *Baugh-Belarde.* First, there is no danger of a conflict of interest, since Alyeska is not an insurer and therefore owes PPCO no fiduciary duty. Second, the nature of the CIP program served to reduce litigation, since all contractors were covered under an umbrella plan, eliminating multitudes of lawsuits replete with cross-claims, third party claims, and indemnity and contribution actions. Finally, the wrap-up insurance program actually reduced the burden on contractors by lowering the cost of obtaining insurance coverage.[9]

## III. IS ALYESKA BARRED BECAUSE IT SEEKS TO RECOVER PREMIUM PAYMENTS?

PPCO contends that Alyeska's claim is essentially one for insurance premiums and should fail because insurance premiums are not within the indemnity clause, and because it is against public policy to allow a joint tortfeasor to collect insurance premiums for insurance benefitting the other joint tortfeasor. PPCO also claims that ALPAC is the real party in interest, because ALPAC paid the settlement.

■ The contract required PPCO to "indemnify, defend and save harmless ... ALYESKA ... from and against any and all claims, demands and causes of action brought by ... CONTRACTOR's ... employees." PPCO breached this promise when it refused to contribute its full share of the settlement obligation.

■ The goal of contract damages is to place the nonbreaching party in as good a position as if the contract had been fully performed. *Guard v. P & R Enterprises,* 631 P.2d 1068, 1071 (Alaska 1981); *McBain v. Pratt,* 514 P.2d 823, 828 (Alaska 1973); *Green v. Koslosky,* 384 P.2d 951, 952 (Alaska 1963). Had the contract been fully performed, ALPAC would have contributed $1 million on PPCO's behalf, and Harbor, the excess insurer, would have contributed $2 million. Alyeska would have paid ALPAC $1 million in retrospective premiums. Instead, the excess insurer contributed only $1 million, forcing ALPAC to contribute $2 million; Alyeska then paid ALPAC $2 million in premiums. Alyeska was therefore damaged in the amount of $1 million.

■ It is irrelevant that Alyeska did not make payments directly to Everette, but instead paid ALPAC in the form of insurance premiums. The point is that the payments were made by Alyeska, whereas the indemnity provision obligated PPCO to make them. The fact that Alyeska was insured does not defeat its cause of action. *Tillman v. Wheaton-Haven Recreation Association,* 580 F.2d 1222, 1230 (4th Cir. 1978); *Consolidated Freightways, Inc. v. Moore,* 229 P.2d 882, 884–885 (Wash.1951).

---

9. Alyeska contends its position is supported by several public policy considerations. It is sound policy to enforce contract indemnity provisions, to promote creative and low cost insurance programs which serve to avoid lapses in coverage on large construction projects, and to avoid giving a windfall to PPCO and its excess insurer by transferring to them the benefit of insurance procured by Alyeska for its own benefit.

PPCO argues that Alyeska cannot recover the $1 million paid by ALPAC since this would constitute double recovery of an insured loss. Alyeska argues that the collateral source rule does not allow PPCO to benefit from Alyeska's foresight in obtaining its own insurance.

If Alyeska was in fact self-insured, there is no danger of double recovery. Even though ALPAC made the actual settlement payments, ALPAC was reimbursed in full by Alyeska. In brief, there was no collateral source.

Alternatively, even if Alyeska is not self-insured, the collateral source rule prohibits PPCO's reliance on Alyeska's own insurance coverage. The collateral source rule "provides that any benefits received by an injured party from a source which is entirely independent of and collateral to a wrongdoer who is legally responsible for the injuries will not serve to reduce the damages otherwise recoverable from the wrongdoer." Moceri & Messina, *The Collateral Source Rule in Personal Injury Litigation*, 7 Gonz.L.Rev. 310 (Spring 1972). Here PPCO is attempting to reduce the amount Alyeska, the injured party, could otherwise recover from PPCO. PPCO is a wrongdoer because it materially breached its obligation to indemnify and hold harmless Alyeska. The source is independent and collateral since PPCO made no contributions to Alyeska's own insurance policy. *Aydlett v. Haynes*, 511 P.2d 1311, 1313 (Alaska 1973); *Ridgeway v. North Star Terminal & Stevedoring Co.*, 378 P.2d 647, 650 (Alaska 1963); *see also Wright v. Vickaryous*, 598 P.2d 490, 501–502 (Alaska 1979). If the collateral source rule did not apply to contractual indemnity provisions, no insured indemnitee could ever enforce such a provision.

## IV. IS ALYESKA ENTITLED TO SUMMARY JUDGMENT?

Under Alaska R.Civ.P. 56(c), summary judgment shall be granted if "there is no genuine issue as to any material fact...." Alyeska contends that it is entitled to summary judgment in the amount of $1 million

as a matter of law. PPCO contends that there are genuine and material questions of fact concerning bad faith in the manner in which Alyeska and ALPAC handled Alyeska's defense in *Everette v. Alyeska Pipeline Service Company*, 614 P.2d 1341 (Alaska 1980). The trial court expressly refused to rule on these claims.

PPCO argues that genuine and material issues of fact exist concerning whether bad faith is shown by Alyeska's long delay in tendering its defense; ALPAC's efforts to discourage Harbor Insurance Company from investigating the case; Alyeska's failure to advise PPCO at the outset that there might be some conflict, thereby giving PPCO the opportunity to obtain separate representation, ALPAC's failure to involve PPCO and Harbor in settlement negotiations; and ALPAC's failure to appoint separate counsel for PPCO over an extended period of time.

PPCO's claims of bad faith are not automatically defeated by our conclusion that Alyeska was not PPCO's insurer and therefore owed PPCO no fiduciary duties. Parties to a contract have mutual obligations of good faith and fair dealing. Restatement (Second) Contracts § 205 (1979). PPCO alleged bad faith in general and did not rely on a fiduciary relationship between the parties. PPCO should have the opportunity to prove that Alyeska breached this implied contract duty.

Whether or not PPCO received timely notice of Everette's claim against Alyeska, PPCO bears the burden of proving that it was prejudiced by the manner in which Alyeska and ALPAC defended the suit. In *Weaver Brothers, Inc. v. Chappel*, 684 P.2d 123, 125–126 (Alaska 1984), we held that an insurer has the burden of proving prejudice resulting from untimely notice before its liability is extinguished. There are no sound policy reasons for refusing to extend this rationale to suits for contractual indemnity, especially where the contract did not expressly require notice as a condition precedent to the indemnitor's liability.

We therefore remand this action to the trial court to determine whether Alyeska was guilty of bad faith in conducting its defense against Mr. Everette's claim.

. REVERSED and REMANDED.

MATTHEWS and MOORE, JJ., not participating.