BENTLEY and others, Plaintiffs, vs. FAYAS and another, Defendants and Respondents: REYNOLDS PRESERVING COMPANY, Interpleaded Defendant and Appellant.

*November 6—December 4, 1951.*

For the appellant there were briefs by *Whyte, Hirschboeck & Minahan,* attorneys, and *Victor M. Harding* of counsel, all of Milwaukee, and oral argument by *Roger C. Minahan.*

For the respondents there was a brief by *McCue, Regan & McCue* of Milwaukee, and *Evrard, Evrard, Duffy, Holman & Faulds* of Green Bay, and oral argument by *James R. Faulds* and *Joseph P. Holman.*

CURRIE, J. Whether or not a contract was entered into by Reynolds to provide Fayas with insurance, and the terms thereof (if it is found such a contract was made), must be determined from the testimony of Fayas and of one Kossow, an employee of Reynolds, who handled all negotiations with Fayas on behalf of Reynolds. No other witness testified on this issue.

Since 1934 Fayas has been licensed by the public service commission as a contract motor carrier, his license covering the transportation of goods and not passengers. In 1940, Reynolds contracted with Fayas to transport pickers for Reynolds, and Reynolds procured an indorsement from Hardware Mutual placing Fayas' trucks under Reynolds' fleet policy of automobile liability insurance while so engaged.

With respect to what was said between Fayas and Kossow at the time of making this 1940 arrangement between Reynolds and Fayas, Kossow testified that Fayas told him that Fayas had policies of insurance on file with the public service commission but Fayas did not know exactly what his insurance covered, and Kossow then told Fayas that Reynolds would attach a rider under Reynolds' fleet policy. Kossow further testified that when settlement was made with Fayas in 1940, Reynolds deducted from the amount due Fayas the

amount Reynolds had paid to Hardware Mutual for such rider or indorsement.

Fayas testified that he told Kossow both in 1940 and in 1941 that Fayas had no insurance which covered passengers, and that in the 1940 negotiations Kossow told him that Reynolds had insurance which would cover the pickers and that the cost of such insurance coverage provided by Reynolds was taken off his "earnings," meaning the moneys due him for transporting the pickers.

In 1941, new negotiations were had between Fayas and Kossow with respect to the 1941 season. Reynolds had prepared a written contract setting forth the terms under which Fayas was to transport pickers, and both Fayas and Reynolds signed the same, the last paragraph of which read as follows:

"Items 1 to 6, inclusive, call for trucks in good serviceable condition properly licensed, adequately insured against property damage in the amount of $5,000 and personal liability coverage of $20,000—$100,000 limitations, and in charge of a courteous and competent driver."

Kossow testified that, at the time of entering into the 1941 contract with Fayas, Kossow told him that Reynolds "would continue to carry the same kind of policy as the preceding year." Fayas' testimony as to the conversation he had in 1941 with Kossow with respect to insurance is as follows:

"*Q.* What was said in regard to any changes if there were to be any changes in the insurance coverage between 1940 and 1941? *A.* All he told me we were protected, for the pickers with the insurance as we were the year before.

"*Q.* Said you were protected the same as you were the year before? *A.* That is right."

Reynolds in 1941 provided the same indorsement to its fleet policy with Hardware Mutual that it did in 1940, and the total charge made to Fayas for this was $8.09. This indorsement referred to the trucks to which coverage was extended as being owned by Fayas.

It is clear that the provision in the written 1941 contract requiring Fayas to carry certain automobile liability insurance was for the benefit of Reynolds and not Fayas, and that Reynolds could waive the same if it desired. Therefore, any agreement that Reynolds was to provide insurance coverage for Fayas in 1941 must be established from the conversation between Fayas and Kossow. We construe such conversation to mean that Reynolds was to provide the same indorsement in 1941 to its fleet policy with Hardware Mutual which Reynolds had provided in 1940. Reynolds did procure such indorsement so there was no breach by it in that respect.

On this appeal, in view of the learned trial court's findings, we must accept as true Fayas' testimony that Kossow represented that such fleet indorsement would cover the pickers. That Kossow made such representation in good faith believing it to be true there can be no doubt. In fact, under the decision made by this court March 6, 1951, in *Sandstrom v. Estate of Clausen*, 258 Wis. 534, 46 N. W. (2d) 831, overruling *Brandt v. Employers' Liability Assur. Corp.* 228 Wis. 328, 280 N. W. 403, such representation was legally true, if we ignore the legal effect of the judgment of the trial court rendered April 22, 1944, dismissing the complaint and cross complaints in this action as to Hardware Mutual.

However, assuming (but not deciding) that such representation by Kossow was legally untrue because of the trial court's judgment of April 22, 1944, the same was no more than an innocent misrepresentation of law and not of fact, and not actionable. This case seems to be squarely ruled by the decision of this court in *Johnson v. Brown*, 232 Wis. 642, 288 N. W. 239.

In *Johnson v. Brown* the defendant Brown contracted with plaintiff Johnson for the cutting of timber. Before starting work, Johnson asked Brown whether he and his men were covered by Brown's workmen's compensation insurance. Brown assured him that they were covered. Brown carried

such a policy and in good faith believed that the insurance covered Johnson and his men. Johnson was injured while working. When he came to make application for compensation benefits, it was ruled by the industrial commission that Johnson was an independent contractor and therefore not covered. Johnson then sued Brown for breach of contract. This court held that the assurances given by Brown did not constitute a contract, but only a representation based on a mistake as to the legal effect of the contract between Brown and Johnson.

The general principle of law applying to this type of case is stated in 23 Am. Jur., Fraud and Deceit, p. 810, sec. 46, as follows:

"The rule that fraud cannot be based upon misrepresentations as to matters of law or expressions of opinion as to what is the law governing a particular transaction has been applied in many different situations. Pursuant to this principle it has been held that fraud cannot be predicated of misrepresentations as to the legal effect of a written instrument, as, for example, a deed, a note and mortgage, a federal land warrant, a contract of insurance, or a corporate charter. Hence, fraud cannot be based on statements as to the law of insurance and the legal conditions on which the right of recovery on an insurance policy depends, . . ."

Our conclusion is that there is no liability on the part of Reynolds to Fayas either on contract or on a cause of action in tort based upon fraud and deceit.

Even if we were to sustain the trial court's finding that Reynolds did make a contract to procure insurance for Fayas which Reynolds breached, nevertheless Fayas would not be entitled to recover on his cross complaint against Reynolds because of the fact that he sustained no damages as a result of such breach. The total amount of damages claimed by all the plaintiffs, as alleged in their last amended complaint served in April, 1943, aggregates the sum of $10,400, and

the largest amount claimed by any plaintiff is $2,500, so that plaintiffs' damages are well within the $10,000/$20,000 limits of the policy carried by Fayas with Milwaukee Auto.

In 44 C. J. S., Insurance, p. 940, sec. 225, it is stated: "Where plaintiff has suffered no loss by failure of defendant to procure insurance, plaintiff's damage is *damnum absque injuria*."

It was the holding of the learned trial judge that Reynolds. was liable to Fayas, under its contract to procure insurance for Fayas, as an insurer to the same extent as the Hardware Mutual would be liable if its fleet policy had contained no clause excluding coverage to employees of Reynolds. As a result of such conclusion, the judgment provided that Reynolds was a coinsurer with Milwaukee Auto on the basis of the "other insurance" clause of the Hardware Mutual policy so that Reynolds and Milwaukee Auto would share the liability to plaintiffs in proportion to the liability limits of the Hardware Mutual and Milwaukee Auto policies. The learned trial court cited no authorities in support of such holding that Reynolds was liable as an insurer, nor does respondents' brief cite any.

That. the liability of one who breaches an agreement to procure insurance is not that of an insurer is demonstrated by the decision of *Seaman v. Rindge, Kalmbach, Logie & Co.* 195 Mich. 417, 161 N. W. 919. In that case defendants were alleged to have breached an agreement to provide plaintiff with insurance but there was evidence tending to prove that the plaintiff knew of the breach of such agreement sufficiently in advance of the loss to have taken out other insurance to have protected himself. The Michigan court held that if this were true, then the plaintiff, under the rule requiring plaintiff to mitigate damages, should have then procured other insurance, and, failing to have done so, his damages were not the loss resulting from the subsequent fire, but the value of the policy at the time the failure to insure was

discovered. (The same point was raised but not decided by this court in *Franck v. Stout,* 139 Wis. 223, 120 N. W. 867.) If the liability of the defendants in this Michigan case was that of insurers, it is inconceivable that the court would have placed the duty upon the plaintiff to procure other insurance. Applying the rule of this Michigan case to the facts in the instant case, and assuming Fayas had learned of Reynolds' breach sufficiently in advance of the accident to have procured other insurance coverage (which he did not), would any court hold that he had the duty of procuring such other coverage to minimize his damages if the Milwaukee Auto policy which Fayas already carried afforded him sufficient coverage to protect him as to the claims made against him as a result of the subsequent accident? The question answers itself.

The liability of one who breaches a contract to procure insurance is to pay damages, and is not that of an insurer. In many fact situations the end result of the amount which the party guilty of the breach may be required to pay to the party sustaining loss would be the same, whichever of the two theories of liability be adopted. However, in situations like the instant case radically different results would be obtained, depending on which of the two theories be adopted. It is therefore essential that the correct theory of liability be applied here.

Appellant also raises a most interesting point, that the trial court's judgment of April 22, 1944, dismissing the complaint and the cross complaints of Fayas and Milwaukee Auto against Hardware Mutual, thereby releasing the latter from liability in this case, is not *res adjudicata* as to Reynolds, and therefore under the decision of this court in *Sandstrom v. Estate of Clausen, supra,* the policy indorsement procured by Reynolds from Hardware Mutual did cover the injured pickers. This contention is based upon the fact that the complaint and the dismissed cross complaints asked for no relief against Reynolds, and therefore Reynolds was not an

"aggrieved party" and could not appeal from such judgment. Appellant cites the cases of *Bakula v. Schwab,* 167 Wis. 546, 168 N. W. 378, and *Moehlenpah v. Mayhew,* 138 Wis. 561, 119 N. W. 826, in support of such contention. We find it unnecessary, however, to decide this question inasmuch as it would not affect the result because it is necessary to reverse the judgment upon the other grounds already covered in this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions to dismiss the cross complaint of the defendant Fayas against the interpleaded defendant Reynolds Preserving Company.