603 P.2d 108

**PPG INDUSTRIES, INC., a corporation, Appellant,**

v.

**CONTINENTAL HELLER CORPORATION, a California Corporation, Appellee.**

**No. 1 CA–CIV 4214.**

Court of Appeals of Arizona,
Division 1,
Department A.

Sept. 27, 1979.

Rehearing Denied Nov. 2, 1979.

Review Denied Nov. 27, 1979.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Richard McC. Shannon, Phoenix, for appellant.

Robert W. Browder, P.C., by Robert W. Browder, Phoenix, for appellee.

## OPINION

OGG, Chief Judge.

Pittsburgh Plate and Glass Company (PPG), as third-party defendant, appeals from a summary judgment in favor of Continental Heller (Heller), the defendant and third-party plaintiff, awarding Heller judgment in the amount of $70,000 plus costs, interest and attorney's fees. The essential facts were stipulated to by the parties and are undisputed.

The initial claim involved plaintiff James W. Bassett, an ironworker and employee of Heller's subcontractor, PPG. Mr. Bassett filed an action against Heller alleging that he was injured due to the negligence of Heller in failing to properly maintain a stairwell. The stairwell was used by the plaintiff to descend from his job location on the roof of the building then under construction.

Heller, as third-party plaintiff, sued PPG, alleging that PPG had entered into a contractual agreement with Heller; that the contract provided that PPG would obtain liability insurance which would include Heller as an insured for operations covered by the contract; and that PPG failed to include Heller and thereby breached the agreement. Heller further alleged that the contracted-for insurance would have protected it from claims such as the one made by the plaintiff.

Heller filed a motion for summary judgment on the third-party complaint, and the motion was granted by minute order of July 27, 1977. The plaintiff in the underlying claim accepted an offer of judgment by Heller and the judgment was entered in favor of plaintiff for $70,000, which was paid by Heller's insurer, Employers Mutual. Consequently, the judgment in favor of Heller and against PPG was modified by stipulation to reflect the amount to which Heller was entitled.

The first issue on appeal is whether the contracted-for policy of primary liability insurance would have protected Heller from the claim brought by the plaintiff in the underlying cause of action. The subcontract agreement states that:

"SECTION 9. *Subcontractor, shall, at its expense, procure, carry and maintain in force insurance on all of its operations as follows*:

(a) Workmen's Compensation and Employer's Liability Insurance as required by any applicable law, . .

(b) *Insurance for liability because of Personal Injury, Bodily Injury* and/or Property Damage sustained or alleged to have been sustained by any person. *The insurance shall cover all operations of the Subcontractor* including, but not limited to, the following:

(I) Premises, Operations and Mobile Equipment Liability.

(II) Completed Operations and Products Liability.

(III) Contractual Liability insuring the obligations assumed by the Subcontractor in this agreement.

(IV) Liability which Subcontractor may incur as a result of the operations, acts or omissions of his subcontractors, suppliers or materialmen and their agents or employees.

(V) Automobile Liability including owned, non-owned and hired automobiles.

(VI) All coverage shall be on an occurrence basis and on a form acceptable to the Contractor.

(VII) The insurance for liability shall provide coverage with limits not less than:

(a) Personal Injury and Bodily Injury $250,000 Each Person

$500,000 Each Occurrence

(b) Property Damage $250,000 Each Occurrence

(VIII) *Such policy or policies shall be endorsed to include the contractor, its officers and employees as additional insureds and shall stipulate that the insurance afforded for the contractor, its officers and employees shall be primary insurance and that any insurance carried by the contractor, its officers or employees shall be excess and not contributory insurance.*

(c) Certificates of insurance shall be furnished by the Subcontractor to the Contractor before any work is commenced hereunder by the Subcontractor. The Certificates of Insurance shall provide that there will be no cancellation, reduction or modification of coverage without ten (10) days prior written notice to the Contractor. In the event Subcontractor does not comply with the requirements of this section, Contractor may, at his option, provide insurance coverage to protect the Owner and Contractor and charge the Subcontractor for the cost of that insurance. The required insurance shall be subject to the approval of the Contractor, but any acceptance of insurance certificates by the Contractor shall in no way limit or relieve the Subcontractor of the duties and responsibilities assumed by him in this Subcontract Agreement.

(d) If higher limits or other forms of insurance are required in the general contract or by the owner, Subcontractor will comply with such requirements." (Emphasis added)

PPG admits that it did not secure an insurance policy to protect Continental Heller and therefore breached section 9 of the subcontract. PPG argues that under the preceding section, the contracted-for insurance would not have protected the appellee because the underlying cause of action did not result from the subcontractor's operations. However, other sections of the subcontract indicate that the underlying cause of action did result from the subcontractor's operations.

Section 5 of the subcontract states that PPG will "assume full and complete responsibility for *all conditions relating to* the work, the site of the work and *its surroundings* and all risks in connection therewith." (Emphasis added). Section 17(a) specifies that PPG will "conduct inspections to determine that safe working conditions and equipment exist and will accept sole responsibility for providing a safe place to work for its employees." Consequently, the safety of the stairs was one of the operations of PPG, and the plaintiff's accident would have been covered by the insurance required under section 9 of the subcontract.

PPG's answers to the appellee's request for admission further establish that the accident resulted from the operations of the subcontractor. PPG admits that the plaintiff was an employee of PPG Industries, was injured while in performance of his work for PPG Industries, and that plaintiff's job required use of the stairwell to gain access to the particular part of the jobsite where he was working.

Precedent dealing with the extent of coverage implied by the phrase "all operations" as used in section 9 of the contract is consistent with the preceding conclusion. In *St. Paul Fire and Marine Ins. Co. v. Coleman*, 316 F.2d 77 (8th Cir. 1963), the court established that "all operations" included activities performed in relation to the use of the premises in question. Similarly, in *Poynter v. Fidelity & Casualty Co. of New York*, 140 So.2d 42 (La.App.1962), "all operations" was held to include work on and off the premises.

Finally, section 17(a) of the contract states that PPG "will fully comply with all laws, orders, regulations and statutes in respect to safety, accident prevention, safety equipment and practices." A.R.S. § 23–403 states that:

"A. Each employer shall furnish to each of his employees, employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.

B. Each employer shall comply with occupational safety and health standards and all regulations and orders issued pursuant to this article." (Emphasis added)

An examination of the Federal Occupational Safety and Health Standards as adopted by Arizona in A.C.C.R. R–4–13–601, indicates that PPG's operations included maintenance of the stairway in question. 29 C.F.R. § 1926 (1974). More specifically, § 1926.16(c) states that:

"(c) To the extent that a subcontractor of any tier agrees to perform any part of the contract, he also assumes responsibility for complying with the standards in this part with respect to that part. Thus, the prime contractor assumes the entire responsibility under the contract and the subcontractor assumes responsibility with respect to his portion of the work. With respect to subcontracted work, the prime contractor and any subcontractor or subcontractors shall be deemed to have joint responsibility."

Consequently, PPG's responsibility included the following regarding housekeeping:

"§ 1926.25. Housekeeping.

(a) During the course of construction, alteration, or repairs, form and scrap lumber with protruding nails, and all other debris, shall be kept cleared from work areas, passageways, *and stairs* in and around buildings or other structures." (Emphasis added)

PPG's responsibility also included:

"§ 1926.26. Illumination.

Construction areas, aisles, *stairs,* ramps, runways, corridors, offices, shops, and storage areas where work is in progress shall be lighted with either natural or artificial illumination. The minimum illumination requirements for work areas are contained in Subpart D of this part." (Emphasis added)

Any similar duty owed by Continental Heller is irrelevant. The question on appeal is whether the accident resulted from PPG's operations as specified in the contract. The preceding admissions, quoted sections of the contract and regulations indicate that under section 9 PPG contracted to obtain primary insurance to protect Heller against claims such as plaintiff's. In other words, PPG's contractual responsibility for all conditions and risks associated with the plaintiff's job, the site of his work, and the surroundings included use of the stairwell by the plaintiff.

## SUBROGATION

The second issue on appeal is whether or not Continental Heller Corporation's insurer, Employers Mutual, is subrogated to the rights of Continental Heller against PPG Industries. The trial court determined that Employers Mutual could pursue Heller's claim for breach of contract. The appellant argues that the trial court's decision conflicts with *Patent Scaffolding Co. v. William Simpson Construction Co.*, 256 Cal. App.2d 506, 64 Cal.Rptr. 187 (1967), and that consequently Employers Mutual is not entitled to pursue Heller's claim.

The court in *Patent* states that:

"The language used in these cases is the verbiage of equity. The lack of any

causal connection between the defendant's breach of contract and the insurer's loss is not specifically articulated, but it is implicit in the discussion of the comparative equities of the parties. The rule in equitable phraseology is this: Where two parties are contractually bound by independent contracts to indemnify the same person for the same loss, the payment by one of them to his indemnitee does not create in him equities superior to the nonpaying indemnitor, justifying subrogation, if the latter did not cause or participate in causing the loss."

64 Cal.Rptr. at 193. The preceding rule only applies if the nonpaying indemnitor did not cause or participate in causing the loss. However, even if PPG had not caused or participated in causing the loss, Arizona case law indicates that the principles incorporated in the *Patent* rule have been rejected in this state.

*Patent* cited *Meyers v. Bank of America Nat. T. & S. Ass'n*, 11 Cal.2d 92, 77 P.2d 1084 (1938), as the leading California case dealing with the aspects of subrogation incorporated in the above quoted rule. The Arizona Supreme Court has rejected the principles upon which the *Meyers* and *Patent* decisions depend. In *Liberty Mutual Ins. Co. v. Thunderbird Bank*, 113 Ariz. 375, 555 P.2d 333 (1976), the Arizona Supreme Court considered a petition for review by the plaintiff, Liberty Mutual Insurance Company, of an opinion of the Court of Appeals affirming an order of the trial court. The trial court order had denied Liberty's motion for summary judgment and had granted the motion of the defendant Thunderbird Bank for summary judgment.

The Court characterized one of the questions on appeal as whether Liberty, as the assignee of the Charles Bruning Company, could maintain an action against Thunderbird. The pertinent facts in this case are as follows. The defendant, James L. Coffelt, was Branch Manager of the Phoenix Office of the Charles Bruning Company. Coffelt intercepted and cashed numerous checks made payable to the Bruning Company.

The checks were ultimately deposited to an account at the Thunderbird Bank. Coffelt had no authority to endorse the checks. Thunderbird made no effort to ascertain whether Bruning had given Coffelt such authority.

A surety contract with Liberty Mutual insured Bruning against any pecuniary loss due to the fraud, dishonesty, forgery, theft or embezzlement of its employees. Bruning recovered its losses from Liberty Mutual and assigned all of its rights against Thunderbird to Liberty Mutual. The contract also provided that Liberty Mutual would be subrogated to the rights of Bruning upon payment of the claims.

In its analysis of Liberty's rights as assignee, the Arizona Supreme Court noted that "[a] number of courts have gone further than our court and have held that a party seeking to assert a claim as an assignee must demonstrate that it would have been entitled to recover in the absence of an assignment as a subrogee." 555 P.2d at 336. The Court then quoted at length from the *Meyers* opinion as the case most heavily relied on by Thunderbird. The relevant portions of the *Meyers* opinion quoted in *Liberty* indicate that "assignment of an assignable cause of action is but one of the recognized forms of subrogation." *Id.* Further, "a formal, written assignment of a claim of the nature of that here involved adds nothing to the enforceability by the assignee of the cause of action." *Id.* And finally, the quoted portion of the *Meyers* opinion states that "one who asserts a right of subrogation, whether by virtue of an assignment or otherwise, must first show a right in equity to be entitled to such subrogation." *Id.*

The Arizona Supreme Court chose not to follow the analysis of the *Meyers* case and stated that the "existence of an equitable right of subrogation is logically irrelevant to the question of whether a party may transfer, by assignment, an otherwise assignable claim." *Id.* at 336.

The Court also quoted extensively from the reasoning of the Georgia Court of Appeals in *First National Bank of Atlanta v.*

*American Surety Co.*, 71 Ga.App. 112, 30 S.E.2d 402 (1944):

> "The right of action was assignable. (Citations omitted) There seems to be a well-recognized distinction between the right to sue on a claim of legal subrogation, which is of an equitable nature, and the right to sue on conventional subrogation, *based on an agreement of the parties.* (Citations omitted)
>
> While there are many cases dealing with the doctrine of subrogation, and some confusion and conflict in the decisions of the various state and federal courts, in this State an action based on conventional subrogation of the type presented by this case, clearly established by an agreement reduced to writing or otherwise shown, in which no equitable relief in aid of the claim is prayed, is an action at law, *and is not controlled by the principles appertaining to an action in equity, and the conventional subrogees in this action did not have the burden of showing the superior equity as against the defendant in order to recover."*

555 P.2d at 337. (Emphasis added)

The contract of insurance between Employers Mutual and Continental Heller provides that Employers Mutual is subrogated to all of Continental Heller's rights of recovery in the event of payment under the policy.

The Court in *Liberty* ultimately concluded that "there was no reason why Thunderbird should be relieved of its unquestioned liability merely because the principal plaintiff, Bruning, took the precaution of insuring itself against the risk of loss." *Id.* at 337. The Court further concluded that "but for the contract between Bruning and Liberty, Thunderbird would clearly have been liable for the amount of the checks to Bruning; it therefore suffers no prejudice when that liability is shifted from Bruning to Liberty under the terms of the contract between those two parties." *Id.* at 337–38.

■ The preceding analysis is directly applicable to the facts of this case. PPG concedes that had Continental Heller paid the $70,000, costs, and attorney fees, it could recover that amount from PPG. In light of the reasoning of *Liberty*, there is no reason why PPG should be relieved of its unquestioned liability for providing primary insurance under section 9(a) VIII of the subcontract merely because Continental Heller had taken the precaution of insuring itself with excess coverage.

The Supreme Court held in *Liberty* that "Liberty may therefore sue as an assignee of Bruning's claim against Thunderbird, and is not required to demonstrate superior equities before it can recover." *Id.* at 338. Similarly, Employers Mutual, as the real party in interest, is not required to demonstrate superior equities before it can recover.

A recent Arizona Court of Appeals decision is consistent with the principles of *Liberty*. In *Highlands Insurance Co. v. Fischer*, 122 Ariz. 394, 595 P.2d 186 (App.1979), appellants were without fault in a single car accident. However, the court held that "where an insured contracts with a third party requiring the latter to pay for loss or damage to insured property, upon payment of the loss the insurer is *subrogated* to the rights of the insured *under the contract."* 595 P.2d at 188. (Emphasis added). Therefore, even if appellant were correct in arguing that the loss to Continental Heller was not caused by any negligence on the part of PPG, under the holding in the *Highlands* case PPG would still be liable to Employers Mutual because the insurer is subrogated to the rights of the insured under the subcontract section requiring PPG to provide primary insurance.

## DAMAGES

■ Appellant contends that there was no damage to the insured Continental Heller apart from any additional premium it may be required to pay for this loss experienced. However, the *Highlands* opinion indicates that "payment to the insured by the insurer is no defense to the subrogation claim for the obvious reason that it is by the making of such payment that the insurer's right of subrogation arises." 595 P.2d

at 188. Consequently, the court rejected the appellant's argument that the insurer's claim should be limited to the amount previously unrecovered by the insured. The agreement in *Highlands* was enforced by the court, and the appellants were required to pay the appellee insurers the amount actually paid by the insurer. Similarly, in this case PPG contracted to provide primary insurance for Continental Heller, therefore it must pay the $70,000 which was initially paid by Employers Mutual.

The court in *Howard P. Foley Co. v. Employers Commercial Union*, 15 Ariz.App. 350, 488 P.2d 987 (1971), stated that "[w]e are inclined to follow those cases which have recognized the right of an indemnitee's insurer, who has defended an action against the indemnitee, to recover costs and attorney's fees from the indemnitor." 488 P.2d at 989. In *Foley* and in this case, the insurers were subrogated to all the insured's rights.

As previously noted, PPG concedes that had Continental Heller paid the $70,000, costs and attorney's fees, it could recover that amount from PPG. In light of the reasoning of *Liberty* and *Highlands*, it is clear that PPG is not relieved of such liability merely because Continental Heller took the precaution of insuring itself. Therefore, the "right of recovery comprises all the damages which should have been within the contemplation of the parties when the contract was made." *Waumbec Mills, Inc. v. Bahnson Service Company*, 103 N.H. 461, 174 A.2d 839, 844 (1961). Recovery includes not only sums paid but also "costs of defending their suits, including attorneys' fees . . . ." *Id.* at 844. *See also Jones v. Adkins*, 526 P.2d 153 (Colo.App.1974) (liability for amount of judgment).

Affirmed.

DONOFRIO, Acting P. J., and FROEB, J., concur.