Rodney CLARK, d/b/a Alaska Pyrotechnics, Inc., Appellant,

v.

GREATER ANCHORAGE, INC., and Terra Nova Insurance Co., Ltd., Appellees.

No. S–2272.

Supreme Court of Alaska.

Sept. 29, 1989.

Michael G. Briggs, Jocelyn M. Sedney, and H. Frank Cahill, Guess & Rudd, Anchorage, for appellant.

Robert C. Auth, Lane, Powell & Barker, Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

Greater Anchorage, Inc. (GAI) is the nonprofit umbrella organization that sponsors the annual Anchorage Fur Rendezvous. In September 1983 Rodney Clark (Clark), doing business as Alaska Pyrotechnics, Inc. (API), entered into a contract with GAI in which he agreed to put on the fireworks display for the 1984 Fur Rendezvous.

A personal injury lawsuit was filed against GAI, Clark, and another party by a spectator injured at the fireworks display. GAI cross-claimed against Clark for indemnification under the contract. A jury found Clark liable to GAI in the amount of $1,000.00. The superior court amended the jury's verdict, and awarded GAI $48,948.42 in damages. Clark then appealed.

BACKGROUND.

The contract between GAI and Clark ("the agreement") was a single page document. By signing the agreement Clark expressly agreed that he would purchase insurance for the event.[1] The entire provision in the agreement relating to insurance reads as follows:

4. API agrees to provide insurance for the event and to provide a certificate of insurance naming GAI as a covered entity.

The agreement was drafted by GAI's executive director, C. Weymouth Bowles. Bowles had worked in the insurance industry for eighteen years.

Clark contacted his insurance agent and obtained a certificate of insurance for the event which he gave to GAI. GAI appeared on the certificate as "Certificate Holder," but GAI was not listed as an additional named insured on the policy.[2]

The Fur Rendezvous fireworks display was held on February 10, 1984. Curtis Libor, a spectator who was watching the fireworks from the A Street bridge, was frightened by an allegedly low-firing shell. Fearing injury from the fireworks, Libor ran into traffic and was immediately struck by an oncoming vehicle. Libor sued GAI, Clark, and the driver for negligence in causing his injury.

The defendants settled with Libor. GAI cross-claimed against Clark before the case was settled. GAI in its cross-claim sought "to be indemnified ... for the amount of any judgment which may be taken ... against GAI," as well as attorney's fees, on the basis of the written agreement signed by Clark and GAI. GAI's liability insurer, Terra Nova Insurance Co. (Terra Nova), joined as a plaintiff in the cross-claim. The parties stipulated that GAI and Terra Nova had paid $48,948.42 in costs and attorney's fees (including the $1,000 deductible that GAI had to pay) in the settlement of Libor's claim against GAI.

GAI moved for partial summary judgment on liability for its total amount of attorney's fees and settlement costs, up to the limit of Clark's liability policy ($500,-000). The motion for summary judgment was denied. The case proceeded to trial before a jury which was in part given the following issues to resolve: whether the parties had agreed that Clark would provide insurance naming GAI as an insured; whether Clark breached that agreement; and what damages GAI incurred as a result of Clark's breach. The jury returned a verdict awarding GAI $1,000.

In response to GAI's motion for amendment of judgment or new trial, the superior court set aside the jury's verdict on damages and "order[ed] additur in the stipulated amount of $48,948.42." The court held that the jury's verdict as to damages was tainted by passion and prejudice, and further concluded that because "damages are stipulated to both as to kind and amount and there are no mitigation issues ... a retrial of the damage issues is a waste of judicial and party resources." This appeal followed.

Clark raised four issues on appeal. He withdrew one issue—whether Terra Nova was subrogated to GAI's claims against Clark—at oral argument. We therefore do not address that issue.[3] The remaining

---

1. As a pyrotechnician, Clark was required to have at least $500,000 bodily injury and $300,-000 property damage insurance for each event he put on. 13 AAC 51.010 (am. 1/14/81).

2. Clark concedes on appeal that the term "covered entity" reflects the intent that GAI was to be listed as an additional named insured on Clark's policy.

3. Clark challenged jury instructions 28 and 29 as erroneous "because they permitted the jury to award damages in favor of the plaintiff Terra Nova Insurance Co. Plaintiffs provided no evidence that Terra Nova was subrogated to the rights of GAI against Clark by paying Libor's claims against GAI."

At oral argument counsel for Clark withdrew the argument that Terra Nova had failed to

issues are (1) whether the superior court erred in denying Clark's motion for directed verdict at the close of GAI's case; (2) whether the court erred in amending the judgment; and (3) whether the court erred in refusing to award Clark attorney's fees.

## DIRECTED VERDICT.

■ This court's role in reviewing the trial court's ruling on a motion for directed verdict is:

> not to weigh conflicting evidence or judge of the credibility of the witnesses, but is rather to determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable [persons] could not differ in their judgment.

*Holiday Inns of America v. Peck,* 520 P.2d 87, 92 (Alaska 1974); *see also Knight v. American Guard & Alert, Inc.,* 714 P.2d 788, 793 (Alaska 1986); *Kavorkian v. Tommy's Elbow Room, Inc.,* 694 P.2d 160, 163 (Alaska 1985), *modified* 711 P.2d 521 (1985).

Clark argues that a directed verdict should have been granted in his favor "because the contract was not an indemnity agreement and was too imprecise to be enforced." GAI concedes that the contract was not an indemnity agreement. It argues, however, that Clark may not now raise "the issue of the definitiveness and certainty of the contract" because he did not raise it below. GAI also argues that if Clark is now permitted to assert this issue, despite allegedly not raising the point at the superior court level, then there was sufficient evidence to enable the "jury to conclude that the agreement required Clark to obtain liability insurance naming GAI as an insured."

■ It is clear the parties are correct that the contract was not an indemnity agreement. "Unless it clearly and unequivocably [sic] expresses the intention to shift liability, an agreement will not be construed" under Alaska law to be an indemnity agreement. *Olympic, Inc. v. Providence Wash. Ins. Co.,* 648 P.2d 1008, 1011 (Alaska 1982). What we have here is an agreement under the terms of which Clark promised to purchase insurance for the benefit of GAI. The rather cryptic agreement "to provide insurance for the event and to provide a certificate of insurance naming GAI as a covered entity" does not clearly and unequivocally express the requisite intent for a indemnity agreement.

■ The superior court, however, did not find that the contract was an indemnity contract and the jury did not return a verdict based upon an indemnity contract. Any error the superior court may have committed by refusing to grant a directed verdict on the issue of whether the agreement was an indemnity agreement is therefore in the nature of harmless error. This court will disregard harmless error. *Veal v. Newlin, Inc.,* 367 P.2d 155, 157 n. 8 (Alaska 1961).

■ GAI also argues that this court should not consider the issue of the agreement's definitiveness and certainty because Clark did not raise this issue before the superior court.[4] We conclude that Clark raised the issue of the agreement's "definitiveness and certainty" to a sufficient extent to preserve the issue for appeal. The contract's validity as either an indemnity contract or a contract to procure insurance was at issue in the superior court. "The appellant need not have expressly presented every theory supporting an argument

---

prove its right to subrogation. In response to further questioning on that issue Clark stated that at trial he had waived any requirement that Terra Nova prove that it was entitled to subrogation.

4. As a rule, a party may not advance new issues or theories on appeal to secure reversal of a lower court decision. *Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985). This court has taken a liberal approach toward determining whether an issue or theory is "new"

on appeal. *Id.* In *O'Neill Investigations v. Illinois Employers Insurance of Wausau,* 636 P.2d 1170, 1175 n. 7 (Alaska 1981), *quoted in Zeman,* 699 P.2d at 1280, we noted:

> Although [appellant's] present theory of coverage was never expressly presented to the trial court, we consider it here because it is not dependent on any new or controverted facts, and because it is closely related to [appellant's] trial court theory and could have been gleaned from its pleadings.

before the trial court, but can expand or refine details of an argument otherwise preserved on appeal." *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985).

■ We now turn to the question of whether the agreement was sufficiently definite and certain to withstand the motion for directed verdict. In *Howarth v. First National Bank of Anchorage*, 596 P.2d 1164, 1167–68 (Alaska 1979), we stated:

> In a contract for the procurement of insurance, the party proving the contract has the burden of showing the subject matter of the contract, the risk insured against, the amount of coverage, the duration of the coverage, and the premiums to be paid.

As noted above, the entire text of the relevant contract provision at issue here reads:

> API agrees to provide insurance for the event and to provide a certificate of insurance naming GAI as a covered entity.

Such an agreement obviously does not explicitly delineate the various factors required in *Howarth*. Nevertheless, "it is permissible to infer the elements of the contract from past dealings of the parties, their conversations and business custom." *Howarth*, 596 P.2d at 1168.

From an examination of the record it is clear that the "subject matter of the contract" is "to provide insurance for the event." "The event" was the 1984 Fur Rendezvous fireworks display, held on February 10, 1984. Furthermore, Clark testified that he was required to have liability insurance in order to obtain a state permit to put on a fireworks display. GAI knew that Clark was required under 13 AAC 51.010 to carry insurance with minimum liability limits of $500,000.[5] Clark had contracted with GAI previously[6] to run the fireworks display at the Fur Rendezvous. Thus both parties were familiar with the insurance requirements for fireworks

shows, and had a history of business dealings with each other.

In the absence of an agreement specifying a different amount, "the amount of coverage" contemplated by the agreement may be inferred to be the legally required minimum, $500,000. Similarly, because no provision was made for additional coverage, "the premiums to be paid" can properly be assumed to have been those necessary to include GAI as an additional insured on Clark's existing policy. "The duration of coverage" was the duration of the event.

Given the parties' knowledge of the required insurance for the event, it is reasonable to determine "the risk to be insured against" by reference to Clark's existing policy. That risk would therefore be whatever risk was specified in the terms of Clark's policy.[7]

■ The only contract interpretation issue subject to dispute at trial was whether the contract required Clark to add GAI as an additional named insured to his existing policy, or whether it was adequate merely to name GAI as the "certificate holder" on the certificate of insurance. Clark concedes on appeal that viewing the evidence most favorably to GAI, he "reasonably should have known that 'covered entity' meant 'additional named insured' and that his failure to obtain insurance for GAI breached this provision of the contract." Thus, all of the necessary elements for a contract to procure insurance may be inferred here. The jury could therefore determine that Clark had agreed to provide insurance for GAI. Because Clark did not name GAI as an additional insured on his policy, he breached the contract. The damages, if any, for which Clark is liable are those which arise from that breach. *Continental Ins. Co. v. Bussell*, 498 P.2d 706, 709 (Alaska 1972). If, as an additional insured, GAI would have been covered un-

---

**5.** In addition, Bowles, GAI's executive director, had nearly twenty years' experience in the insurance industry.

**6.** He has also staged the Fur Rendezvous fireworks display in years since 1984.

**7.** GAI concedes "that the $500,000 general liability policy Clark actually did procure was what the parties contemplated."

der Clark's liability policy for any liability arising from the underlying action here, Clark is liable for any damages GAI and its subrogated insurer had to pay as a result of not being added to the policy.[8]

We hold that the superior court did not err in refusing to grant a directed verdict in favor of Clark since the contract was not too imprecise to be enforced. Reasonable people could differ in their judgment as to whether the agreement, in light of the evidence viewed most favorably to GAI, was definite enough to be enforced. The superior court correctly decided to let the issue go to the jury.

### THE SUPERIOR COURT'S AMENDMENT OF THE VERDICT.

As indicated at the outset, the jury returned a verdict awarding GAI $1,000. In response to GAI's motion for amendment of judgment or new trial the superior court set aside the jury's verdict as to damages

and "order[ed] additur in the stipulated amount of $48,948.42." In so doing the superior court held that the jury's verdict was tainted by passion and prejudice and that a new trial was unnecessary because damages were undisputed.[9]

Additur is a practice in which a trial court increases an inadequate jury damage award, with the consent of the defendant, as an alternative to granting the plaintiff's motion for a new trial. 6A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 59.08[8], at 59–213 to 59–214 (2d ed. 1987). The practice has been held unconstitutional in the federal courts, when it has been found to deny a party's Seventh Amendment right to a jury trial. *Id.; Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935). Many states, however, allow it. *See, e.g., Jehl v. Southern Pac. Co.*, 66 Cal.2d 821, 59 Cal.Rptr. 276, 427 P.2d 988, 992–95 (1967).[10]

---

**8.** In *Action Ads, Inc. v. Judes*, 671 P.2d 309, 312 (Wyo.1983), the court stated that "[t]he measure of damages for breach of a contract to obtain insurance is that amount which would have been recovered had the insurance been furnished as agreed." *See also Keith v. Schiefen-Stockham Ins. Agency, Inc.*, 209 Kan. 537, 498 P.2d 265, 270 (1972).

The cases relied upon by the dissent, while on point, do not reach the proper result. In criticizing *Bentley v. Fayas*, 260 Wis. 177, 50 N.W.2d 404 (1951), one insurance treatise states:

The injustice of this result seems apparent at first glance. The court by this holding nullifies all contracts where the plaintiff also had enough common sense to get his own insurance policy. It cannot be argued that this was damnum absque injuria since his rates would probably be affected by the fact that he had to file a claim against his own insurer rather than rely on the insurance required by the contract.

16A J. Appleman & J. Appleman, *Insurance Law and Practice* § 8840, at 165 n. 91 (1981). The holding in *Mid-Century Insurance Co. v. Hutsel*, 10 Cal.App.3d 1065, 89 Cal.Rptr. 421 (1970), seems to us one example of those "unreasonable results reached in California cases allowing a party to escape scot free despite his breach of promise if the promisee has insurance." 16A J. Appleman & J. Appleman § 8840, at 170 n. 2.

Professor John G. Fleming points out that allowing the promisor the benefit of the third party's mitigation distorts the true cost of the promisor's breach. Fleming, *The Collateral Source Rule and Contract Damages*, 71 Calif.L. Rev. 56, 62 (1983). Moreover, from the perspective of efficiency, he points out that the possibil-

ity of a collateral benefit accruing in this fashion would rarely enter into the promisor's calculations. *Id.* Finally, he notes that the law should not interfere with the parties' own allocation of risks simply because the promisee created a back-up safeguard for himself. *Id.*

Thus, we agree with the court in *PPG Industries, Inc. v. Continental Heller Corp.*, 124 Ariz. 216, 603 P.2d 108 (1979), that there is no reason to relieve the promisor of its liability for providing primary insurance merely because the promisee had taken the precaution of insuring itself with excess insurance. *Id.* at 221, 603 P.2d at 113 (citing *Liberty Mut. Ins. Co. v. Thunderbird Bank*, 113 Ariz. 375, 379, 555 P.2d 333, 337 (1976)). *See also Troost v. Estate of DeBoer*, 155 Cal.App.3d 289, 202 Cal.Rptr. 47, 50–52 (1984) (distinguishing *Mid-Century Ins. Co. v. Hutsel*); McCoid, *Allocation of Loss and Property Insurance*, 39 Ind.L.J. 647, 664, 674 (1964); *cf. Waumbec Mills, Inc. v. Bahnson Serv. Co.*, 103 N.H. 461, 174 A.2d 839, 842, 844 (1961).

Libor specifically alleged that inadequate management, supervision, and direction of pedestrian and motor vehicle traffic led to his injury. If Clark's policy would have covered GAI's liability for such negligence, Clark would be liable for the damages incurred.

**9.** In reaching this conclusion the superior court reasoned in part that a new trial was unnecessary because passion and prejudice on the jury's part went only to the amount of damages and not to the liability issue.

**10.** The Supreme Court's ruling in *Dimick* is not binding on the states since the Seventh Amend-

■ We need not decide the constitutionality of additur under Alaska's constitution. This is because even in those jurisdictions where additur is otherwise unconstitutional, it does not contravene a party's right to a trial by jury when there is no genuine issue of fact as to damages. "It would be a mere formality to order a partial new trial limited to the issue of damages when the court could immediately thereafter grant summary judgment for the undisputed amount." *Moore's Federal Practice* ¶ 59.08[8], at 59–217 to 59–218.

In the instant case there was no dispute about damages at trial. Clark made only two arguments to the jury: (1) that he was not required to name GAI as an additional insured, and (2) that even if he were, GAI waived the requirement by accepting the certificate of insurance as proffered. GAI argued that damages were "a simple issue" resolved merely by reference to the stipulation in the amount of $48,948.42. Clark did not attempt to rebut this argument or to introduce any evidence to contradict it. Instead, Clark acknowledged in closing arguments, in the context of the waiver issue, that he would be "prejudiced to the tune of approximately $50,000" if held to a requirement of listing GAI as an additional insured.

■ Since damages were not in dispute, it was error for the court to give the jury an instruction allowing it to fix damages. The court corrected its error by virtue of its amendment of the jury's verdict. Under these circumstances the court's amendment was not unconstitutional.[11]

But this does not end our discussion of the damage issue. For although we have concluded that in the context of this case resolution of the damage issue presented solely questions of law, we further hold that the superior court committed plain error in ruling that $48,948.42 in damages were recoverable by GAI.

■ In our view the damage issues in the case must be remanded to the superior court for further proceedings. First, the superior court must determine whether Clark's policy would have covered GAI's liability in this case.[12] Second, the question of liability between co-insurers, and in turn the amount of damages GAI is entitled to recover, cannot be resolved until the superior court examines the "other insurance clauses" of both Clark's and GAI's insurance policies.[13] In regard to this latter issue the record fails to disclose that the superior court had both insurance policies before it prior to making its ruling that the jury's damage verdict should be vacated and that a judgment for damages in the amount of $48,948.42 should be entered in favor of GAI.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings not inconsistent with this opinion.[14]

COMPTON, J., with whom BURKE, J., joins, dissent in part.

COMPTON, Justice, with whom BURKE, Justice, joins, dissenting in part.

I agree with the court's resolution of the directed verdict issue, including its conclusion that the contract formed and to be enforced is a contract to procure insurance. For reasons hereafter stated, I suggest that the court may have misapplied the measure of damages for breach of contract to procure insurance in this factual setting. Further, invocation of the "plain error doc-

ment has not been extended to them. *Freeman v. Wood*, 379 Mass. 777, 401 N.E.2d 108, 112 (1980).

11. Since the ground for additur in this case was that damages were undisputed, it was not necessary for the defendant to consent.

12. *See supra* note 8.

13. *See Providence Wash. Ins. Co. v. Alaska Pac. Assurance Co.*, 603 P.2d 899, 902–03 (Alaska 1979); *Werley v. United Servs. Auto. Ass'n*, 498 P.2d 112, 117, 119 (Alaska 1972); 6 J. Appleman & J. Appleman, *Insurance Law and Practice* § 3901, at 419, 421 (1972).

14. Our disposition of the damage issue has made it unnecessary to address Clark's attorney's fees specification of error.

trine" to achieve a remand of this case is without any basis in fact.

## I.

As this court has observed, consideration of an issue not raised by the parties may be appropriate where the issue has been called to the parties' attention and they have been afforded an opportunity to brief it. *Vest v. First Nat'l Bank of Fairbanks*, 659 P.2d 1233, 1234 n. 2 (Alaska 1983), *rehearing granted*, 670 P.2d 707 (Alaska 1983). Here the court has resolved a damage issue on a theory that has not been subjected to the adversary process, affording the parties no opportunity to brief it. Precedent suggests that the theory may not have survived adversarial debate. A number of courts have considered the appropriate measure of damages in cases with nearly identical fact patterns: someone breaches a promise to purchase insurance, but the promisee, who suffers a loss, is covered nonetheless by another insurer; the promisee or his subrogated insurer sues for damages against the promisor. Some courts have held that the promisee, because his loss is fully reimbursed, suffers no damage, and neither he nor his subrogated insurer has any rights against the promisor. *L.W. & P. Armstrong, Inc. v. The Mormacmar*, 196 F.2d 752, 755 (2nd Cir. 1952); *Bentley v. Fayas*, 260 Wis. 177, 50 N.W.2d 404, 409 (1951); *Mid–Century Insurance Company v. Hutsel*, 10 Cal. App.3d 1065, 89 Cal.Rptr. 421, 424 (1970).

In *Bentley*, the Wisconsin Supreme Court reversed a lower court ruling virtually indistinguishable from our ruling today: "the [lower court] judgment provided that Reynolds [the promisor] was a co-insurer with Milwaukee Auto [the promisee's insurer] on the basis of the 'other insurance' clause of the Hardware Mutual policy [policy on which promisor was to name the promisee as an insured] so that Reynolds and Milwaukee Auto would share the liability to the plaintiffs in proportion to the liability limits of the Hardware Mutual and Milwaukee Auto policies." 50 N.W.2d at 409. In reversing this holding, the court remarked that the "liability of one who breaches a contract to procure insurance is to pay damages, and is not that of an insurer." *Id.* Since the promisee's insurer would cover the entire amount of the promisee's loss, the promisee had sustained no damage.

Similarly, we have held that "when a promise to obtain insurance is breached, the promisor does not thereby become an insurer, but is liable only for damages." *Alyeska Pipeline Service v. H.C. Price Co.*, 694 P.2d 782, 786 (Alaska 1985) (citing *Mid–Century Ins. Co. v. Hutsel*, 89 Cal. Rptr. at 423)). Indeed, GAI admits that Clark is not an insurer. Nonetheless, while paying lip service to this rule, today we inexplicably choose to ignore it, treating Clark exactly as an insurer. There is no evidence, nor is it argued, that Clark contracted with GAI to procure insurance for Terra Nova, GAI's own insurance carrier. Neither is there evidence or argument that from past dealings, GAI or Clark had reason to believe Clark was procuring insurance for Terra Nova. Whatever Terra Nova's damage, GAI's damage amounted to $1,000. The jury awarded GAI precisely that amount, and arguably its verdict should be affirmed.

As the court notes in footnote 8, there is a contrary view which it chooses to adopt. For my part, I deem it appropriate to point out only that another view has been espoused and adopted. I deem it inappropriate to engage in a debate over the issue, especially since the litigants have been relegated to the status of observers, no longer having any voice in the production or direction of the play.

## II.

If we assume that Clark is an insurer, and further assume, as the court declares, that Clark stipulated to damages in the amount of $48,948.42, and that they were not in dispute, a remand of "the damage issues ... to the superior court for further proceedings" is unsupportable.

A person might reasonably question why a remand is necessary if damages have been stipulated to and are not in dispute. The court's answer is that "the superior

court committed plain error in ruling that $48,948.42 in damages were recoverable by GAI." Op. at 14. To correct this plain error, the superior court is instructed as to the steps it must take:

First, the superior court must determine whether Clark's policy would have covered GAI's liability in this case. Second, the question of liability between co-insurers, and in turn the amount of damages GAI is entitled to recover, cannot be resolved until the superior court examines the "other insurance clauses" of both Clark's and GAI's insurance policies. In regard to this later issue the record fails to disclose that the superior court had both insurance policies before it prior to making its ruling that the jury's damage verdict should be vacated and that a judgment for damages in the amount of $48,948.42 should be entered in favor of GAI.

Op. at 14–15 (footnotes omitted).

According to repeated pronouncements by this court, "[u]nder the 'plain error' doctrine, an issue not raised at trial may nonetheless be considered by this court if it appears that an obvious mistake has been made which creates a high likelihood that injustice has resulted." *State v. Northwestern Construction, Inc.*, 741 P.2d 235, 239 (Alaska 1987), citing *Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981). *See also Matter of L.A.M.*, 727 P.2d 1057, 1059 (Alaska 1986); *City of Nome v. Ailak*, 570 P.2d 162, 171 (Alaska 1977); *Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87, 91 (Alaska 1974).

Neither party ever asserted in the superior court, nor does either assert in this court, that the superior court committed plain error in failing to answer unasked questions regarding insurance policies which neither party offered into evidence at trial, and which are not before this court in any shape, manner or form. The declaration that plain error has been committed is a *sua sponte* conclusion by the court, without any basis in the record to support it.

It is not obvious that any mistake has been made, much less one that "creates a high likelihood that injustice has resulted." The record, briefs and arguments are barren of information that could lead to such a conclusion. As this court observed in *Werley v. United States Automobile Association*, 498 P.2d 112, 116 (Alaska 1972), "other insurance" clauses take a variety of forms.[1] It therefore cannot be said that plain error has been committed. Even the questions the court poses make it obvious that it cannot be a proper application of the plain error doctrine that is being utilized to achieve the result it directs. Indeed, this is a misapplication of the plain error doctrine, which should not be countenanced. By this misapplication, the decision whether a litigant gets a new trial becomes wholly arbitrary. The court's inability to answer this issue serves only to confirm the arbitrariness of the result it directs.

---

1. Specifically, the court identifies three types of "other insurance" clauses:

Most, perhaps all, automobile liability insurance policies contain "other insurance" clauses providing that in the event of other application insurance, (1) this insurance shall not apply (an "escape" clause), or (2) that this insurance shall be excess only (an "excess" clause), or (3) there shall be a proration of the loss (a "proration" clause). Combinations of these are also found.

*Werley,* 498 P.2d at 116 (footnote omitted).