KEY PACIFIC MORTGAGE, INC., and
Key Bank of Alaska, Appellants,

v.

INDUSTRIAL INDEMNITY COMPANY
OF ALASKA, Appellee.

No. S–4957.

Supreme Court of Alaska.

Jan. 22, 1993.

Patrick B. Gilmore, Atkinson, Conway & Gagnon, Anchorage, for appellants.

Roger F. Holmes, Biss and Holmes, Anchorage, and William R. Hickman, Stephen M. Todd, Pamela A. Okano, Reed McClure, Seattle, WA, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE and COMPTON, JJ.

OPINION

COMPTON, Justice.

Key Pacific Mortgage, Inc. and Key Bank of Alaska (Insureds) appeal from a

summary judgment holding that the Errors and Omissions (E & O) insurance policy each purchased from Industrial Indemnity Company of Alaska (Industrial Indemnity) does not provide coverage for (1) accidental loss of private mortgage insurance or (2) accidental failure to protect an abandoned residence against freeze damage. We affirm the judgment of the superior court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Insureds are related financial institutions in the mortgage loan and servicing business in Alaska. Each makes residential mortgage loans and sells most of these loans to investors on the secondary market. After they sell the loans, Insureds continue to service them on behalf of the investors, handling the day-to-day management of the loans.

On over 97% of the residential loans serviced by Insureds, the investors require the mortgagors to pay for the purchase of private mortgage insurance (PMI). PMI protects mortgagees from mortgagor default. If the mortgagor defaults, the PMI company has the option of buying the loan and taking title to the property, or paying a set percentage of the outstanding balance on the loan. Insureds collect the premiums for PMI from the mortgagors as part of the regular monthly payment and pay the PMI insurance carrier.

In the mid–1980s, when Alaska suffered a recession, foreclosures increased dramatically. Because of the increased volume of foreclosures, Insureds failed to comply with notice, foreclosure and premium renewal requirements of PMI policies. On those grounds, PMI carriers have denied coverage or reduced payments on a substantial number of claims submitted by Insureds.

Insureds also failed to ensure that the water pipes were drained or heat maintained in mortgaged homes abandoned by mortgagors. The standard homeowner's insurance policy excludes freeze damage to an unoccupied building when the insured has not exercised reasonable care to avoid such damage. The homeowner's and forced-place [1] insurers have rejected Insured's claims for freeze damage.

Insureds purchased E & O insurance from Industrial Indemnity for the period May 1983–May 1987. E & O Form CF 00 63 provides coverage for losses and liability arising out of the accidental loss of other insurance. The disputed provisions are sections II A and III A. Section II A reads, in part:

> COVERAGE—MORTGAGEE INTEREST: Subject to the limit of liability specified above, this Company agrees to indemnify the Insured for loss to the Insured's mortgagee interest (including the Insured's mortgagee interest in any legal fiduciary capacity) in real property and in personal property mortgaged in connection therewith, when such loss occurs through error or accidental omission on the part of the Insured ... in the operation of the Insured's customary procedure in requiring, procuring and maintaining valid policies or other evidences of insurance against the perils described below, ...

Section III A reads, in part:

> COVERAGE—MORTGAGEE LIABILITY: Subject to the limit of liability, this Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages in any mortgagee, mortgage fiduciary or mortgage servicing agency capacity arising by reason of error or accidental omission in the operation of the Insured's customary procedure in procuring and maintaining valid policies or other evidences of insurance, against the risks and perils described below, for the benefit of the mortgagor in amounts and under terms and conditions customarily accepted by the mortgagor; ...

---

**1.** Forced-place insurance takes the place of homeowner's insurance if a mortgagor abandons or if the bank forecloses on a mortgaged residence.

Insureds failed to pay PMI premiums on two mortgage loans. When the loans went into default, the PMI carrier denied Insureds' claims. An investor demanded reimbursement from Insureds for the face value of the PMI policy in one case and repurchase of the loan in the other. Insureds complied with the investor's demands.

Insureds submitted claims to Industrial Indemnity under the E & O policy for the losses arising out of the lapse in PMI coverage. They stated that there were also a number of additional potential claims. Industrial Indemnity denied coverage for claims arising out of the loss of PMI.

Insureds also submitted claims for freeze damage which the homeowner's and forced-place insurance carriers had denied. Industrial Indemnity denied coverage for these claims as well.

Insureds sued Industrial Indemnity for declaratory relief and breach of contract. After Industrial Indemnity answered, both parties filed motions for partial summary judgment on the PMI claims. The trial court granted Industrial Indemnity's motion.

Industrial Indemnity moved also for summary judgment on the freeze damage claims. The trial court granted that motion as well. Final judgment was entered on January 2, 1992. Insureds appeal.

## II. DISCUSSION

### A. STANDARD OF REVIEW

■ The trial court decided all issues on motions for summary judgment. On appeal from a summary judgment, this court determines whether there was a genuine issue of material fact and whether the moving party was entitled to judgment as a

matter of law on the established facts. *Crissey v. Alaska USA Fed. Credit Union*, 811 P.2d 1057, 1059 (Alaska 1991). Since no material facts are in dispute, the issue is one of contract interpretation. The independent judgment standard of review applies. *Jackson v. Barbero*, 776 P.2d 786, 788 (Alaska 1989).

### B. CLAIMS RESULTING FROM THE ACCIDENTAL LOSS OF PMI

■ Section III A covers Insureds' liability for the loss of policies which are procured and maintained "for the benefit of the mortgagor." The crux of the dispute is whether PMI is procured and maintained "for the benefit of the mortgagor."[2] The trial court concluded that it is not.

■ Insurance "for the benefit of" a party is insurance in which the party has a right to the proceeds. *See Howarth v. First Nat'l Bank of Anchorage*, 596 P.2d 1164, 1169 n. 16 (Alaska 1979); Robert E. Keeton, *Basic Text on Insurance Law* § 4.1(b) (1971); *cf. Fireman's Fund Mortgage Corp. v. Allstate Ins. Co.*, 838 P.2d 790, 792 (Alaska 1992) (holder of second deed of trust, although not named in policy, has a lender's interest, and is therefore a loss payee under policy "for the benefit of" the lender); *Clark v. Greater Anchorage, Inc.*, 780 P.2d 1031, 1034 (Alaska 1989) (agreement to provide insurance naming sponsor of festival a covered entity is an agreement to purchase insurance for the benefit of the sponsor). The contractual beneficiaries of PMI are mortgagees and investors. Mortgagors have no right to the proceeds of a PMI policy. In fact, mortgagors cannot purchase PMI for themselves, since PMI insurance does not insure a mortgagor against the risk of his own default.[3]

Insureds concede that mortgagors are not entitled to the proceeds of PMI policies.

---

2. Industrial Indemnity conceded at oral argument that for the purpose of this appeal, the PMI issue is ripe for adjudication. Therefore, we deem abandoned its claim that Insureds' suit is premature, and reach the merits of the issue.

3. Each PMI policy in the record included a provision subrogating the PMI insurer to the mortgagee's rights against the mortgagor. For example, the PMI insurer may enforce a deficiency judgment against the defaulting mortgagor. *Hutson v. Wenatchee Fed. Sav. & Loan*

Nevertheless, Insureds argue that mortgagors obtain substantial benefits from PMI. Purchasing PMI usually reduces the downpayment required to qualify for a loan. PMI companies may loan money to delinquent mortgagors or to mortgagors who do not have sufficient cash to close a prospective sale.

██ We conclude that the benefits PMI confers upon mortgagors are only incidental. PMI protects mortgagees and investors, not mortgagors. Incidental benefits which may flow to mortgagors from PMI do not transform PMI to insurance "for the benefit of" the mortgagor. Section III A does not cover Insureds' failure to maintain PMI policies for the benefit of the investors.

### C. CLAIMS RESULTING FROM FREEZE DAMAGE

██ Since Insureds did not take steps to protect abandoned mortgaged property, their freeze damage claims were excluded by the underlying homeowner's policies. Insureds argue that their failure to exercise reasonable care to avoid freeze damage is a failure to maintain valid policies of insurance, an occurrence covered by sections II A and III A.

Section II A covers losses that occur through Insureds' error or accidental omission in "requiring, procuring and maintaining valid policies," resulting in "requisite insurance [ ] not [being] in force at the time of loss." Section III A covers losses "arising by reason of error or accidental omission in the operation of the Insured's customary procedure in procuring and maintaining valid policies ... of insurance." Both coverages apply to the maintenance of the policies themselves.

The underlying homeowner's policies were in effect at the time of the freeze damage. The freeze damage claims were denied because they were excluded from

coverage by the underlying policies, not because Insureds failed to maintain the policies. Sections II A and III A cover claims arising from the failure to maintain valid policies of insurance, not from the failure to maintain mortgaged property. Since the underlying policies were still in force at the time of the damage, sections II A and III A do not cover Insureds' freeze damage claims.

### III. CONCLUSION

PMI is not maintained for the benefit of the mortgagor. Therefore, section III A does not cover claims arising from Insureds' failure to maintain PMI policies.

The freeze damage claims are not covered by sections II A or III A of the policy. The underlying homeowner's policies were in force at the time of the damage. Insureds' failure to properly maintain mortgaged properties is not an error or omission in maintaining the policies.

The judgment of the superior court is AFFIRMED.

MATTHEWS, J., not participating.

---

*Ass'n,* 588 P.2d 1192, 1193 (Wash.App.1978) (explaining that PMI insurer pays mortgagee and

takes on burden of foreclosing on the debt should the mortgagor default).